UNITED STATES of America

v.

Steven D. JONES, Appellant.

No. 90–3266.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 16, 1991.

Decided Oct. 25, 1991.

Before WALD and EDWARDS, Circuit Judges, and FAIRCHILD,* Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Appellant Steven D. Jones pled guilty to a two-count information charging fraud in connection with an access device (*i.e.*, a credit card) in violation of 18 U.S.C. § 1029(a)(2) (1988), and wire fraud, in violation of 18 U.S.C. § 1343 (1988). At sentencing, the district court departed upwards from the prescribed sentencing guideline pursuant to U.S.S.G. § 4A1.3 (1989),[1] finding that appellant's criminal history category seriously underrepresented appellant's actual criminal history. Appellant challenges both the underlying basis and reasonableness of this departure. We uphold the district court's sentence.

## I. BACKGROUND

Appellant pled guilty to two counts of fraud arising out of an incident involving a mailbag that he stole or received on January 13, 1989. Count I of the information charged that appellant took from the mailbag a Prudential Bache brokerage account statement addressed to "Julie Ann Walthers." Claiming that he was "Julian Walther" and that his Prudential Bache debit card had been issued under an incorrect name, appellant procured from Prudential Bache a debit card in the name of Julian Walther. Jones used this card to obtain approximately $26,000 in airline tickets, hotel accommodations, cash advances, jewelry and personal effects.

Count II of the information charged that appellant used information from a Government Investor's Trust account statement, also taken from the mailbag, to transfer $20,000 from the money market account of one Stanley Bendet to a bank account under appellant's control.

Allan P. Mackinnon, Washington, D.C. (appointed by the Court), for appellant.

David L. Smith, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher and Elizabeth Trosman, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1988).

1. The 1989 Sentencing Guidelines were in effect at the time of appellant's sentencing.

Appellant appeared before the district court for sentencing on December 20, 1989. According to the Presentence Investigation Report ("PSI"), appellant had a criminal history category of II[2] and an offense level of 11,[3] yielding a sentencing range of 10–16 months. *See* United States Sentencing Commission, *Guidelines Manual,* Sentencing Table (November, 1989). Finding that category II underrepresented the seriousness of his actual criminal history, the district court departed from the Guidelines and imposed concurrent sentences of thirty months for each count. Transcript of Sentencing Hearing (Dec. 20, 1989) at 7–8.

On appeal, this court remanded for resentencing in light of *United States v. Allen,* 898 F.2d 203 (D.C.Cir.1990), which held that before departing from the applicable Guidelines range, a sentencing court should first ascertain whether an adjustment *within* the Guidelines is appropriate. *Id.* at 204. The *Allen* court quoted from the Sentencing Guidelines:

> For example, if the court concludes that the defendant's criminal history category of III significantly under-represents the seriousness of the defendant's criminal history, and that the seriousness of the defendant's criminal history most closely resembles that of most defendants with a category IV criminal history, the court should look to the guideline range specified for a defendant with a category IV criminal history to guide its departure.

*Id.* (quoting U.S.S.G. § 4A1.3 (1989) (Policy Statement)).

On remand, the district court again found that level II was not an accurate reflection of the appellant's true criminal history due to the many offenses and criminal activities not included in the calculation of his criminal history score. Consideration of these other offenses, the court held, demonstrated that "criminal history category V is the level which best represents ... [appellant's] ... criminal activities." *United States v. Jones,* Criminal No. 89–368, Memorandum Opinion ("Mem. op.") at 2 (D.D.C. Dec. 21, 1990).

Citing U.S.S.G. §§ 4A1.3 & 4A1.1(a) (1989), the district court added three points to appellant's criminal history score on account of appellant's admitted embezzlement of over $56,000 from an art gallery where he had been employed from April, 1987 to December, 1987. Appellant signed an affidavit admitting his embezzlement of the funds, and in August, 1988, executed a Confessed Judgment note in which he promised to repay the funds to the art gallery. After making several payments on the note, appellant defaulted and a civil judgment was entered against him in April, 1989.

Using U.S.S.G. § 4A1.1(e) (1989) as a reference, the court found that an additional two points should be added to appellant's criminal history score because the instant offense occurred less than two years after the embezzlement. The court added one more point for a 1986 arrest for breaking and entering for which the appellant received probation before judgment. *Cf.* U.S.S.G. § 4A1.1(c) (1989).[4]

Inclusion of these six additional criminal history points would have given the appellant a criminal history score of 9, the upper end of criminal history category IV. *See supra,* Sentencing Table. The court found,

---

**2.** The probation officer assigned three criminal history points because of appellant's sentence in a Washington, D.C. forgery case. Appellant was arrested in January, 1989 and sentenced to one to three years on September 25, 1989. *See* U.S.S.G. § 4A1.1(a) (1989). Three criminal history points yields a criminal history category of II. *See* United States Sentencing Commission, *Guidelines Manual,* Sentencing Table (November, 1989).

**3.** The probation officer identified a base offense level of 6 for fraud in connection with an access device and wire fraud. *See* U.S.S.G. § 2F1.1(a) (1989). He then added 5 points pursuant to

U.S.S.G. § 2F1.1(b)(1)(F) (1989) as the total loss from the two counts exceeded $40,000, and 2 points because the offense behavior involved more than minimal planning and the scheme defrauded more than one person. *See* U.S.S.G. § 2F1.1(b)(2) (1989). From this total of 13 points, the probation officer subtracted 2 points on account of appellant's acceptance of responsibility for his criminal conduct. *See* U.S.S.G. § 3E1.1(a) (1989).

**4.** U.S.S.G. § 4A1.1(c) (1989) provides that one criminal history point should be added for "each prior sentence not included in (a) or (b)...."

however, that even category IV underrepresented the defendant's true criminal history. Noting that Jones had "committed the instant offense while on release in three different pending cases in different jurisdictions,"[5] the court found that

> defendant's flagrant disregard for the law, demonstrated by the fact that he continued on the crime spree which led to the instant offense ..., requires that the Court depart upwards from a criminal history category IV. *See* Guideline 4A1.3(d).[6]

Mem. op., at 3–4.

Finally, the court noted that appellant had

> engaged in numerous acts of deception and fraud which were not factored into the Guideline calculations. Defendant obtained at least 10 fraudulent credit cards, stole mail containing government checks, impersonated a reporter to defraud people of money, transmitted insider information about accounts while employed at a brokerage firm, and stole personal checks while at the brokerage firm.

*Id.* at 4. The court found that these "similar acts of criminal conduct ... clearly warrant an upward departure in defendant's criminal history category. *See* Guideline 4A1.3(e)."[7] *Id.* The court therefore found that "Category V is the appropriate reference to be used when sentencing defendant." *Id.* at 4–5. An offense level of 11 and a criminal history category of V yields a Guidelines range of 24–30 months. *See supra,* Sentencing Table. The court sentenced appellant to concurrent sentences of 30 months for each count of conviction.

Appellant raises two issues on appeal. First, he argues that the art gallery embezzlement and the "numerous acts of deception" were intimately related to the offenses to which he pled and therefore improper grounds upon which to base a criminal history departure. Had the district court viewed the art gallery embezzlement and the "numerous acts of deception" as part of "the same course of conduct or common scheme or plan as the offense[s] of conviction," U.S.S.G. § 1B1.3(a)(2) (1989), the overall sentence could not have exceeded 24 months.[8] Second, appellant

---

**5.** In November, 1988, appellant was arrested in Maryland for forgery and theft. In January, 1989, appellant was arrested in Virginia for forgery. Because appellant failed to appear in either case, bench warrants were outstanding in both cases at the time of his arrest for the instant offense on September 14, 1989. The third case refers to appellant's arrest and conviction in the District of Columbia for forgery. *See supra* n. 2.

**6.** U.S.S.G. § 4A1.3(d) (1989) provides that the court may depart from the applicable Guidelines range based on information including, but not limited to, "whether the defendant was pending trial, sentencing, or appeal on another charge at the time of the instant offense."

**7.** U.S.S.G. § 4A1.3(e) (1989) provides that the court may depart from the applicable Guidelines range based on, but not limited to, information concerning "prior similar adult criminal conduct not resulting in a criminal conviction."

**8.** Appellant reasons that the art gallery embezzlement and the "numerous acts of deception and fraud" were both "of a character for which § 3D1.2(d) would require multiple count grouping" as well as part of the "same course of conduct or common scheme or plan" as the two counts of conviction. U.S.S.G. § 1B1.3(a)(2) (1989). As such, appellant argues, the art gal-

lery embezzlement and the "numerous acts of deception" should have been treated for sentencing purposes pursuant to the rules for multiple count grouping in U.S.S.G. § 3D1.2(d) (1989). *See* U.S.S.G. § 1B1.3(a)(2) (1989).

The offense level in the case of multiple counts of fraud or embezzlement is determined by the total amount of money lost. U.S.S.G. § 3D1.2(d) (1989). Adding the $56,772.33 of the art gallery embezzlement to the $45,931.33 stolen in the credit card and wire fraud counts increases the offense level by one point from level 11 to level 12. *See* U.S.S.G. § 2F1.1(b)(1)(G) (1989). The district court did not make sufficient findings to determine definitively what the offense level would have been had the "numerous acts of deception and fraud" been factored into the offense level. Appellant concedes, however, that the offense level could have been as high as level 13.

It is unclear what the criminal history category would have been had the district court considered the art gallery embezzlement and the "numerous acts of deception" as part of the offense level and not part of appellant's criminal history. As the district court added five criminal history points for the art gallery embezzlement, its excision would reduce appellant's criminal history by five points, resulting in a possible reduction from category V to ei-

argues that even if the embezzlement and the "numerous acts of deception" were proper grounds for a criminal history departure, fairness dictates that Jones' overall sentence be no greater than that which would have been imposed had he been convicted of (either by guilty plea or after trial), or stipulated to, these offenses as part of this criminal prosecution (*i.e.*, 24 months).[9] Any sentence based on a departure that exceeds that level he claims is *per se* unreasonable.

## II. ANALYSIS

### A. *Standard of Review*

■ In reviewing departures from the Sentencing Guidelines, this circuit follows the three-part test articulated in *United States v. Diaz–Villafane*, 874 F.2d 43, 49 (1st Cir.), *cert. denied*, 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). *See United States v. Ogbeide*, 911 F.2d 793, 795 (D.C.Cir.1990); *United States v. Adonis*, 891 F.2d 300, 303 (D.C.Cir.1989). First, we must determine whether the district court's reasons for the departure are, as a matter of law, "of a kind or degree that may appropriately be relied upon to justify departure." *Diaz–Villafane*, 874 F.2d at 49. Second, we must determine whether the facts supporting the district court's reasoning are clearly erroneous. *Id.* Assuming that the departure is warranted in both law and fact, we review the extent of the departure under a standard of reasonable-

ness. *Id.* Of course, where a defendant has failed to object at the sentencing hearing below, we are reluctant to overturn the district court's sentence in the absence of "plain error." *See United States v. Ortez*, 902 F.2d 61, 64 (D.C.Cir.1990).[10]

### B. *The Art Gallery Embezzlement*

The district court relied on U.S.S.G. § 4A1.3 (1989) in departing from the Guidelines on account of the art gallery embezzlement. U.S.S.G. § 4A1.3 (1989) provides that the sentencing court may depart from the applicable Guidelines range "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes...." U.S.S.G. § 4A1.3 (1989). "[R]eliable information" includes, but is not limited to, information concerning "prior similar adult criminal conduct not resulting in a criminal conviction." U.S.S.G. §§ 4A1.3(e) (1989).

■ We think that the plain language of U.S.S.G. § 4A1.3 (1989) demonstrates that the trial court did not err in basing a criminal history departure on the art gallery embezzlement. Appellant's admitted embezzlement of funds from the art gallery fits squarely into U.S.S.G. § 4A1.3(e) (1989). The embezzlement was "prior" to the instant offense, occurring over a year before the mailbag incident, and the mis-

---

ther IV or III. For purposes of evaluating his claim, we accept appellant's calculation that if the offense level had been raised to 13 by the inclusion of the additional criminal conduct, his criminal history category would have been reduced to III. Brief for Appellant, at 11.

An offense level of 13 and criminal history category of III yields a sentencing range of 18–24 months. Assuming the district court would have sentenced appellant at the high end of the Guidelines range, his sentence would have been 24 months.

**9.** Had appellant been charged and convicted of the art gallery embezzlement as well as the "numerous acts of deception" as part of the current prosecution, these additional counts would have been factored into his offense level pursuant to the multiple count grouping rules of U.S.S.G. § 3D1.2(d) (1989). Similarly, appellant argues, these offenses would have been factored into the multiple count grouping rules had he merely stipulated to them as part of his plea agreement. *See* U.S.S.G. § 1B1.2(c) (1989). Once appellant finds his way into the multiple count grouping rules, the calculation is identical to that outlined in note 8.

**10.** Appellant did challenge the district court's finding as to the amount he had embezzled. Transcript of Sentencing Hearing (Oct. 31, 1990), at 3. Jones claims that he signed the affidavit admitting the embezzlement under duress and that he actually only benefitted by approximately $18,000, not the $56,772.33 found by the district court. (Appellant claims that an accomplice profited by the balance of the stated amount.) Appellant did not, however, object at the time to the trial court's reliance on either the art gallery embezzlement or the "numerous acts of deception" to support the criminal history departure.

conduct was certainly "similar" to the instant conduct; both involved fraud. *See, e.g., United States v. Keys*, 899 F.2d 983, 989 (10th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 160, 112 L.Ed.2d 125 (1990) (prior assaultive behavior "similar" to current charge of weapons offense). Moreover, the art gallery embezzlement did not result in a criminal conviction.

 Of course, if the art gallery embezzlement was conduct related to the current offenses, as appellant urges, then it would have been error for the district court to include it as part of appellant's criminal history. The Sentencing Guidelines clearly envision criminal history and current offenses as mutually exclusive. *See United States v. Kim*, 896 F.2d 678, 683 (2d Cir. 1990) ("[b]y focusing on 'prior' misconduct [in U.S.S.G. § 4A1.3(e)], the Commission was obviously contemplating acts not relevant to the offense of conviction, since those acts would enter into the 'relevant conduct' analysis used to determine the base offense level and specific offense characteristics"); *United States v. Fortenbury*, 917 F.2d 477, 479 (10th Cir.1990) (noting that "factors considered in the criminal history categories are distinct from those considered in offense levels"); *see also*, Federal Sentencing Manual, ¶ 7.01[3][b] n. 35 (1991). We must therefore determine whether the art gallery embezzlement was "part of the same course of conduct or common scheme or plan as the offense of conviction" and hence properly considered, if at all, only as part of the current offenses. U.S.S.G. § 1B1.3(a)(2) (1989).[11]

Section 1B1.3(a)(2) governs situations involving

> a pattern of misconduct that cannot be readily broken into discrete, identifiable units that are meaningful for purposes of sentencing. For example, a pattern of embezzlement may consist of several acts of taking *that cannot separately be identified,* even though the overall conduct is clear.

United States Sentencing Commission, *Guidelines Manual*, § 1B1.3 (Background) (November, 1989) (emphasis supplied). The art gallery embezzlement and the two counts relating to the mailbag clearly *can* be separately identified. The art gallery embezzlement occurred over a year before the mailbag fraud. *See, e.g., United States v. Kappes*, 936 F.2d 227, 230–31 (6th Cir.1991) (similar but unrelated crimes committed six years apart not part of the same course of conduct or common plan); *United States v. Silverman*, 889 F.2d 1531, 1538–39 (6th Cir.1989) (remanding for consideration of whether drug sale in October, 1987 was part of common plan with drug sale in February, 1988). Moreover, the two incidents involved different individuals. According to the PSI, appellant relied on information from an individual named "David" in receiving the mailbag and conducting the "Julian Walther" fraud. Appellant did not meet "David," however, until after he had ceased to work for the art gallery. *See, e.g., United States v. Law-*

---

11. If the art gallery embezzlement was part of the "the same course of conduct or common scheme or plan as the offense[s] of conviction," then, as a matter of law, it was an impermissible ground upon which to base a criminal history departure. We note, however, that in reviewing a district court's application of the Guidelines, as opposed to its departure from them, the district court's determination that particular conduct is related to the current offense or is part of the defendant's criminal history is a factual question reviewed under a clearly erroneous standard. *See, e.g., United States v. Walling*, 936 F.2d 469, 471 (10th Cir.1991) (applying clearly erroneous standard to district court's determination that conduct underlying prior sentence was not part of the instant offense); *United States v. Wood*, 924 F.2d 399, 403 (1st Cir.1991) (giving "considerable deference" to sentencing court's finding that drugs other than those specified in the indictment were part of the same common scheme or course of conduct; absent mistake of law, reviewing for "clear error"); *United States v. Perdomo*, 927 F.2d 111, 115 (2nd Cir.1991) (applying clearly erroneous standard to district court's finding that defendant's criminal activities constituted the same course of conduct); *United States v. Cockerham*, 919 F.2d 286, 289 (5th Cir.1990) (same). It is unclear whether the same standard of review applies in the case of a departure from the Guidelines. We therefore apply the strictest standard—*de novo* review—to the question of whether the art gallery embezzlement was part of the same course of conduct or common scheme as the current offenses and leave for another day the question of whether we are in fact *required* to do so.

*rence*, 915 F.2d 402, 407 (8th Cir.1990) (finding defendant's cocaine and marijuana sales were part of same course of conduct where defendant had at least one common customer for both types of drugs); *United States v. Santiago*, 906 F.2d 867, 872–73 (2d Cir.1990) (same course of conduct found where defendant sold drugs to same purchaser). Finally, though both the mailbag crimes and the embezzlement scheme involved fraud, the *nature* of the crimes clearly differed. *See, e.g., United States v. Perdomo*, 927 F.2d 111, 115 (2d Cir.1991) (finding that same course of conduct refers to disparate acts of misconduct involving a "specified type of criminal activity"). They were thus "similar" within the meaning of U.S.S.G. § 4A1.3(e) (1989), but not related in the sense of being part of the same course of conduct or common plan.[12] We find no error, then, in the district court's conclusion that the art gallery embezzlement was part of the defendant's criminal history and not part of the current offenses.

## C. *Reasonableness of Departure Based on the Embezzlement*

We also review the extent of the departure based on the embezzlement for reasonableness. Appellant argues that the departure in this case was unreasonable because the total sentence imposed may have exceeded the sentence he would have received had he stipulated to or been convicted of the art gallery embezzlement as part of this criminal prosecution.[13] Appellant relies on *United States v. Ferra*, 900 F.2d 1057 (7th Cir.1990), in which the court stated that "[i]t would throw the structure of the guidelines out of kilter to say that a defendant may receive more time on a 'departure' than he could have received had he been convicted of the crimes leading the judge to depart." *Id.* at 1063.

We think appellant misconstrues both the Guidelines and the relevant prece-

dent. U.S.S.G. §§ 1B1.2(c) and 3D1.1 (1989) do say that conduct to which a criminal defendant has stipulated to or been convicted of is factored into the defendant's offense level pursuant to the rules for multiple count grouping. We believe that implicit in these rules, however, is a more general premise that only conduct that is related to the offense of conviction can be the subject of an additional count of conviction within the meaning of U.S.S.G. § 3D1.1 (1989) or a stipulation within the meaning of U.S.S.G. § 1B1.2(c) (1989).

This premise is plainly evident in the case of an additional count of conviction under U.S.S.G. § 3D1.1 (1989). Appellant could have been convicted of the art gallery embezzlement as part of this prosecution only if the government could have *charged* appellant with the art gallery embezzlement in the same indictment with the current offenses. The government could have done that, however, only if the mailbag incident and the art gallery embezzlement were "of the same or similar character or ... based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Fed.R.Crim.P. 8(a). We have already concluded, however, that the art gallery embezzlement and the mailbag offenses were not "part of the same course of conduct or common scheme or plan as the offense[s] of conviction" within the meaning of U.S.S.G. § 1B1.3(a)(2) (1989).[14] As Rule 8(a) is no broader than U.S.S.G. § 1B1.3(a)(2) (1989), *cf.* William W. Wilkins, Jr. & John R. Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines*, 41 S.C.L.Rev. 495, 515 (1990) (noting that U.S.S.G. § 1B1.3(a)(2) is coextensive with, and arguably even broader than, Rule 8(a)); *United States v. Perdomo*, 927 F.2d 111, 115 (2d Cir.1991) (same); *United States v. Lawrence*, 915 F.2d 402, 407 (8th Cir.1990)

---

12. Appellant's main argument that the art gallery embezzlement is related to the current offenses relies on the fact that the embezzlement is mentioned in the plea agreement and was "at the forefront" of the government's allocution at

Jones' sentencing. Appellant's Brief, at 6. We find neither fact persuasive.

13. *See supra* note 9.

14. *See* discussion *supra* pp. 736–737.

(same); *United States v. Santiago,* 906 F.2d 867, 872 (2d Cir.1990) (same), appellant could not have been charged with, or convicted of, the art gallery embezzlement as part of this prosecution. His hypothetical conviction for the art gallery embezzlement is thus an impossibility and therefore should not be used as a measure of the reasonableness of this criminal history departure.

■ Equally unpersuasive is appellant's argument based on U.S.S.G. § 1B1.2(c) (1989) that by stipulating to the art gallery embezzlement that conduct would have been factored into his offense level pursuant to the rules for multiple count grouping. While there is no express Rule or Guideline limiting the scope of stipulations to other crimes for purposes of inclusion in a defendant's current offense level in the same way that Rule 8(a) limits the crimes includible in a single indictment, we believe that the structure of the Guidelines mandates the conclusion that the conduct to which a criminal defendant stipulates pursuant to U.S.S.G. § 1B1.2(c) (1989) must be related to the offense of conviction. This is because the Guidelines assume a basic dichotomy between conduct that is related to the current offense and conduct that is part of the defendant's criminal history. Appellant's reading of U.S.S.G. § 1B1.2(c) (1989) as permitting any stipulated offense to be included in a defendant's offense level for sentencing would fatally erase that distinction; U.S.S.G. § 1B1.2(c) (1989) would then serve as an escape mechanism by which conduct that is appropriately considered as part of the defendant's criminal history could be factored into the defendant's offense level. While there is a certain amount of "play ... in the joints" in the Guidelines, *United States v. Ocasio,* 914 F.2d 330, 336 (1st Cir.1990), we do not believe that U.S.S.G. § 1B1.2(c) (1989) could possibly have been intended to undermine the fundamental distinction between criminal history and current offenses.[15] We therefore decline to judge the reasonableness of the district court's departure on the basis of appellant's hypothetical stipulation to the art gallery embezzlement.

There is no escaping the fact that the categorization of conduct as either criminal history or current offense can affect the ultimate sentence imposed. This is inevitable in a sentencing guidelines scheme that requires the division of relevant conduct into these two basic categories. We recognize that this division is often a "close call." But while such cases may require more careful appellate review, they do not require that we ignore this basic distinction in the Guidelines. Having already concluded that the district court did not err in treating the art gallery embezzlement as part of appellant's criminal history, we decline to conduct a further hypothetical inquiry on the premise that the district court was wrong.

Appellant's assertion nothwithstanding, nothing in *United States v. Ferra* is to the contrary. *Ferra* stands for the unremarkable proposition that courts should use the Sentencing Guidelines as a reference point in determining the reasonableness of a departure from the Guidelines. As the court in *United States v. Allen* explained with reference to criminal history departures,

> if ... defendant's criminal history category of III significantly under-represents the seriousness of the defendant's criminal history ..., the court should look to the guideline range specified for a defendant with a category IV ... to guide its departure.

*Allen,* 898 F.2d at 203 (quoting U.S.S.G. § 4A1.3 (1989) (Policy Statement)). Similarly, in determining the reasonableness of an offense level departure, according to *Ferra,* the court should "treat the aggravating factor as a separate crime and ask how the defendant would be treated [under the Guidelines] if convicted of it." *Ferra,*

---

**15.** We have found only one case in which a sentencing court adjusted a defendant's offense level based on the defendant's stipulation to conduct unrelated to the offense of conviction. *See United States v. Eske,* 925 F.2d 205 (7th Cir.1991). One judge wrote separately suggesting that the Sentencing Commission could not have intended U.S.S.G. § 1B1.2(c) (1989) to trump the more basic premise of U.S.S.G. § 1B1.3(a)(2) (1989) that only conduct that is part of the same course of conduct or common scheme as the offense of conviction should be considered in determining a defendant's offense level. *Id.* at 209 (Cudahy, J., concurring).

900 F.2d at 1062.[16] It was in this context that the court stated that a defendant should not serve a longer sentence based on a departure than if he had actually been convicted of the conduct that was the basis of the departure.

■ Thus, *Ferra* teaches not that a criminal history departure is unreasonable if the overall sentence exceeds what the sentence would have been had the defendant stipulated to or been convicted of the conduct underlying the departure *as part of the current prosecution.* Rather, at most it says that in departing on criminal history grounds because of conduct for which the defendant was not convicted, it would be unreasonable to increase the defendant's sentence beyond what the sentence would have been had the defendant at some prior time been convicted of the conduct at issue. In this case, however, we need not even reach the issue of whether the parameter of *Ferra,* so construed, defines an absolute limit on a trial court's discretion. In all probability, this appellant's sentence *was not* longer than it would have been had he been convicted of the art gallery embezzlement prior to this prosecution.

Had appellant been convicted of the art gallery embezzlement his sentence would have probably been in excess of one year and one month. *See* D.C.Code §§ 22–3811(a), 22–3812(a) (1981) (embezzlement of more than $250 punishable by up to 10 years imprisonment); 18 U.S.C. § 641 *et seq.* (1988) (embezzlement of more than $100 punishable by imprisonment of up to 10 years). Under U.S.S.G. § 4A1.1(a) (1989), a defendant is assigned three criminal history points for each prior sentence exceeding one year and one month. This is exactly how many points the district court increased appellant's criminal history score on account of the art gallery embezzlement. Appellant committed the mailbag fraud within two years of the art gallery embezzlement. Under U.S.S.G. § 4A1.1(e) (1989), two points are assigned to a defendant's criminal history for committing "the instant offense less than two years after release from imprisonment on a sentence counted under (a) or (b)...." Had appellant in fact been convicted, sentenced and released for the art gallery embezzlement, the same two points would have been added to his criminal history score.

■ We thus ultimately find the departure based on the art gallery embezzlement to be reasonable. The district court added five criminal history points for the art gallery embezzlement, moving the appellant from criminal history category II to criminal history category IV. At offense level 11, this increased appellant's sentencing range from 10–16 months to 18–24 months. *See supra,* Sentencing Table. Assuming sentencing at the high end of the range, appellant's sentence was increased by 8 months on account of the art gallery embezzlement. Considering the fact that, had he been convicted of the embezzlement in a prior prosecution, he would probably have served over a year for the embezzlement *in addition* to an additional 8 months as part of this sentence, we cannot say that the 8 months increase was an "unreasonable" departure from the Guidelines on account of defendant's embezzlement of over $50,000 from his employer. We therefore find the departure based on the art gallery embezzlement was not unreasonable.

### D. *The "Numerous Acts of Deception"*

The government concedes that the trial court erred in basing a criminal history departure on appellant's involvement in the "numerous acts of deception" arising out of the mailbag incident. Respondent's Brief at 24. These activities, unlike the art gallery embezzlement, clearly were related to the current offenses.

■ For the first time in this circuit we are faced with the question of the validity of a departure from the Sentencing Guidelines that rests on both permissible and impermissible grounds. Our sister circuits are divided in their approaches to this situation. The Ninth and Tenth Circuits hold

---

**16.** *Accord United States v. Kim,* 896 F.2d 678, 684–86 (2d Cir.1990); *United States v. Zamarripa,* 905 F.2d 337, 342 (10th Cir.1990) (same; citing *Kim* and *Ferra*); *United States v. Kikumura,* 918 F.2d 1084, 1112–13 (3d Cir.1990) (citing *Ferra* with approval). *But see United States v. Ocasio,* 914 F.2d 330, 336 (1st Cir.1990) (declining to endorse such "pat answers" to the question of the reasonableness of a Guidelines departure).

that when a departure is based on improper and proper grounds, the case must be remanded for new sentencing because the reviewing court has "no way to determine whether any portion of the sentence was based upon consideration of improper factors." *United States v. Nuño–Para,* 877 F.2d 1409, 1414 (9th Cir.1989); *see also United States v. Zamarripa,* 905 F.2d 337, 342 (10th Cir.1990); *United States v. Hernandez–Vasquez,* 884 F.2d 1314, 1315–16 (9th Cir.1989). The Seventh Circuit, in contrast, ignores the improper ground and determines whether the remaining valid ground(s) can support the departure. *United States v. Franklin,* 902 F.2d 501, 508 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990) ("we do not think our task is to probe the mind of the sentencing judge and try to determine what portions of the departure he or she assigned to the different grounds for departure").

The First Circuit has taken a middle position. In *United States v. Diaz–Bastardo,* 929 F.2d 798 (1st Cir.1991), the court articulated a three-part test for reviewing a departure based on proper and improper grounds. Such a departure will be affirmed so long as:

1) the direction and degree of the departure are reasonable in relation to the remaining (valid) ground[;]

2) excision of the improper ground does not obscure or defeat the expressed reasoning of the district court[;] and

3) the reviewing court is left, on the record as a whole, with the definite and firm conviction that removal of the inappropriate ground would not be likely to alter the district court's view of the sentence rightfully to be imposed.

*Id.* at 800.[17]

■■■ We find the First Circuit test persuasive because it meets the twin goals of insuring that a sentence is imposed for proper reasons and conserving judicial resources. In applying that test to this case, we find that the departure should be af-

firmed. First, the district court cited sufficient factors to permit a reasonable departure to criminal history category V before it ever mentioned the "numerous acts of deception" at sentencing. We therefore find that the direction and degree of the departure is reasonable based solely on the valid grounds. Second, the departure was grounded on the appellant's long history of prior criminal activity. Excision of the last of these grounds—the reference to "numerous acts of deception"—in no way obscures or defeats the basic reasoning of the district court. Finally, this record leaves us with the firm and definite conviction that elimination of the improper ground would not have changed the district judge's view of the proper sentence to be imposed. Apart from the district court's prior action in sentencing appellant to the same sentence of 30 months, our conviction is based primarily on the fact that the district court mentioned the "numerous acts of deception" only at the tail end of its list of reasons supporting an upward departure and treated it, in contrast to the other factors supporting departure, in a rather summary fashion. We are thus convinced that the "numerous acts of deception" did not play a central role in the court's determination as to the proper sentence to be imposed. *Cf. id.* at 800 (remanding for resentencing because the "[sentencing] court's comments ... were focussed equally, if not more intensely, on [the improper ground]"). Factoring in, finally, appellant's failure to object below, we find that the district court's improper consideration of appellant's "numerous acts of deception" was harmless error.

Ultimately, then, we find that the district court's upward departure from the Sentencing Guidelines was supported in law and fact and was not unreasonable.

*Affirmed.*

---

17. A recent decision by this court appears consistent with this approach. *See United States v. Samuels,* 938 F.2d 210, 216 (D.C.Cir.1991) (remanding for resentencing where the court could not "discern the extent to which the district court based its decision to depart on [the improper ground]").