UNITED STATES of America, Appellee,

v.

Miguel MOLINA, a/k/a Juan Menchaca-Gonzalez, Roberto Ramirez–Perez, Miguel Molina–Casarez, Appellant.

No. 90–3261.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 11, 1991.

Decided Jan. 7, 1992.

---

Catherine A. Brown, Washington, D.C., (appointed by the Court) for appellant.

J. Patrick Rowan, Asst. U.S. Atty., for appellee. Jay B. Stephens, U.S. Atty., and John R. Fisher, Roy W. McLeese, III and P. Kevin Carwile, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before EDWARDS and SILBERMAN, Circuit Judges, and VAN GRAAFEILAND,* Circuit Judge, United States Court of Appeals for the Second Circuit.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

Miguel Molina appeals from an enhanced sentence imposed upon him following his plea of guilty to a one-count indictment charging illegal entry into the United States. Based upon Molina's criminal record, the District Court departed from the sentencing range of 24–30 months prescribed by the United States Sentencing Guidelines ("Guidelines") and imposed a sentence of 60 months' incarceration followed by three years of supervised release—the maximum penalty permitted by statute.

On the record before us, we find that the District Court relied upon impermissible factors in deciding to depart from the Guidelines; we also find that the trial court failed to justify adequately the extent of the departure. Accordingly, we vacate the sentence imposed and remand for resentencing. We further direct the District Court to consider on remand an *ex post facto* question that is apparent on the record of this case.

## I. BACKGROUND

In late May of 1990, the Immigration and Naturalization Service learned that Miguel Molina was incarcerated in the District of Columbia jail on a charge of attempted burglary. A computer check of Molina's fingerprints revealed that he was an illegal alien who previously had been convicted of at least one felony offense. When confronted, Molina admitted that he had entered the country illegally in May of 1989.

Molina subsequently was charged in a one-count indictment with illegally entering the United States after previous deportation for a non-immigration felony, in violation of 8 U.S.C. § 1326(a), (b)(1) (1988). The indictment alleged:

> Between on or about April 6, 1989 and on or about June 12, 1990, within the District of Columbia and elsewhere, the defendant Miguel Molina[,] also known [by various aliases] ..., an alien previously arrested and deported subsequent to his conviction for the commission of a felony, did knowingly, willfully and unlawfully re-enter the United States....

Indictment (filed July 12, 1990) at 1 (emphasis deleted), *reprinted in* Brief of Appellant at 2. Molina pled guilty to the indictment, without a plea agreement, on September 4, 1990.

The Pre–Sentence Report ("PSR") prepared in Molina's case calculated his *offense level* under Guideline section 2L1.2 as ten, founded upon a base offense level of eight, a four-level increase because of Molina's prior conviction of a non-immigration

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1988).

felony, and a two-level reduction for acceptance of responsibility. *See* PSR at 4, *reprinted in* Appendix to Brief of Appellant ("App."), tab C; United States Sentencing Commission, *Guidelines Manual,* § 2L1.2 (Nov. 1991). Based upon Molina's seven prior convictions for serious offenses, the PSR assigned him a total of 16 *criminal history* points; this placed Molina in criminal history category VI.[1] Several other prior convictions for petty offenses—including possession of marijuana, theft and paint sniffing—were noted in the PSR but not used in calculating Molina's criminal history score. *See* PSR at 8. The PSR also revealed that Molina had been arrested at least eleven other times, and that he had entered the United States illegally on four prior occasions. *See id.* at 8, 11–12.

The sentencing range corresponding to Molina's *offense level* (ten) and his *criminal history category* (VI) was 24–30 months. *See* U.S.S.G. Ch. 5, Pt. A (Sentencing Table). Based upon Molina's extensive criminal record, however, the PSR recommended an upward departure from the Guideline range. *See* PSR at 11–12.

On November 2, 1990, the District Court sentenced Molina. At the sentencing hearing, the government argued for an upward departure based upon Molina's repeated immigration violations and his substantial criminal record. Defense counsel argued the converse, contending that Molina's immigration offenses and other prior convictions already were taken into account by his criminal history score and that mitigating factors were present, including Molina's poverty-stricken upbringing in Mexico.

The District Court found that an upward departure was warranted on criminal history grounds.[2] In explaining its rationale for departure, the court stated:

> I realize that the guideline range is 24 to 30 months. It appears to the court that under the considerations I must take into account which really are beyond anything contemplated in the guideline computations this sentence must be enhanced. I have attempted to determine in the light of a variety of factors the degree to which it should be enhanced and I am required and wish to set forth the factors that play a part in my decision.

> We have a situation here where it is obvious that deportation will accomplish nothing because the gentleman will immediately return to the United States if he can. He has done so in the past regularly and there's no reason to think that if he was simply deported after a lesser sentence he wouldn't immediately come back into the country illegally.

---

1. The calculation used by the Probation Officer was as follows:

| Date of Conviction | Offense | Points |
|---|---|---|
| 3/5/85 | Criminal Trespass | 1 |
| 2/10/86 | Burglary of Vehicle | 3 |
| 8/5/87 | Illegal Entry to U.S. | 0 |
| 3/25/88 | Attempted Burglary | 3 |
| 12/2/88 | Illegal Entry to U.S. | 2 |
| 10/3/89 | Simple Assault | 2 |
| 2/14/90 | Attempted Burglary | 2 |
| | Subtotal: | 13 |
| Instant offense committed while on parole | | 2 |
| Instant offense committed less than two years after release from prison | | 1 |
| | TOTAL: | 16 |

PSR at 5–8.

2. The District Court did not explicitly make the finding required for a criminal history departure pursuant to section 4A1.3 of the Guidelines, *i.e.,* that "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3, p.s. The Government defends the District Court's decision as a departure based on "criminal history," however, and we find no reason to question the Government's characterization.

He's already been deported three times [3] and it has had no effect.

■ When he returns to this community for whatever reason he has engaged in repeated continuous anti-social behavior being subjected constantly to arrests and has had a whole series of convictions as referred to by the U.S. Attorney, some of which are indeed quite serious matters.

■ In other words, he has used his presence here in the country to further criminal objectives. There is no evidence before me presented by anyone that he has done anything constructive in the country on the numerous times he's come here.

■ The fact that some of these offenses have been committed in violation of his parole and while he is on parole demonstrates to the court a total irresponsibility in connection with his obligations under the law of this country. Some of these offenses border on the violent. And of course they have been committed in the context of his having received repeated warnings that he must alter his conduct which he is for some reason unable to do.

Transcript of Sentencing Hearing (Nov. 2, 1990) ("Tr.") at 9–11, *reprinted in* App., tab B (paragraph numbers added). The trial court also stated, in earlier comments, that Molina was arguably guilty of obstruction of justice based upon his repeated use of aliases and that it was "a very close question as to whether ... he doesn't deserve some ... recomputation of the guidelines upward for that alone." *Id.* at 6.

Relying upon the "unusual and quite special factors" described in the statement of its reasons for departure, *id.* at 11, the District Court sentenced Molina to five years of imprisonment and three years of supervised release—the maximum permitted by the statute. *See* 8 U.S.C. § 1326(b)(1). Molina now appeals from the sentence imposed.

## II. DISCUSSION

On appeal, Molina argues that the District Court failed to identify adequate

grounds for departure, and that the extent of court's departure was not adequately justified. We find merit in both of Molina's contentions.

### A. *Adequacy of Grounds for Departure*

■ The Sentencing Reform Act provides that a district court may depart from the applicable Guideline range if it

> finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

18 U.S.C. § 3553(b) (1988); *see also* U.S.S.G. § 5K2.0, p.s. (authorizing departure in circumstances described by section 3553(b)). Whether an aggravating factor was "adequately taken into consideration" by the Sentencing Commission is a question of statutory interpretation that we review *de novo*. *United States v. Ogbeide*, 911 F.2d 793, 795 (D.C.Cir.1990).

In this case, the District Court mentioned six factors in explaining its decision to depart from the Guideline range: (1) Molina's repeated illegal entries into the United States (¶ 2); (2) the extensiveness of Molina's criminal record (¶¶ 3–5); (3) Molina's numerous prior arrests (¶ 3); (4) the fact that some offenses were committed while on parole (¶ 5); (5) Molina's possible liability for obstruction of justice based upon his past use of aliases, Tr. at 6; and (6) the fact that Molina had never "done anything constructive" in the United States (¶ 4). Molina argues that none of these factors justified departure from the Guideline sentencing range.

■ The Guidelines foreclose the possibility of a departure in this case based upon Molina's prior arrests, his parole status or his past use of aliases. *See* U.S.S.G. § 4A1.3, p.s. (prior arrest record not ground for criminal history departure); *id.* § 4A1.1(d) (providing upward adjustment for commission of offense while on pa-

---

**3.** The PSR actually reveals, and Molina admits    to, four prior deportations. *See* PSR at 11–12.

role [4]); *id.* § 3C1.1, comment. (n. 4) (use of aliases inappropriate ground for obstruction of justice enhancement absent actual hindrance of instant prosecution). Thus, the Government essentially concedes, as it must, that factors (3) through (5) are not appropriate grounds for departure. The sixth factor, Molina's apparent failure to contribute to society, is simply irrelevant to the sentencing calculus. *See United States v. Cervantes–Lucatero,* 889 F.2d 916, 918 (9th Cir.1989) (alien's entry into United States for bad or criminal purpose cannot justify departure); U.S.S.G. §§ 5H1.5, 5H1.11 (defendant's employment history and contribution to society generally irrelevant to sentencing). The Government offers nothing to suggest otherwise.

The Government argues, however, that the District Court's use of the foregoing inappropriate factors is not fatal to its departure decision. The Government contends that the first and second factors mentioned by the court—Molina's repeated illegal entries into the United States and his extensive criminal past—are valid grounds for departure. Because these two factors represent the "substance of the trial court's statement," the Government urges, the departure decision should be affirmed despite the trial court's mention of at least four illicit factors. Brief for Appellee at 14.

■ We agree that the first factor cited by the District Court, and possibly the second,[5] could constitute grounds for some upward departure in a case of this sort. The first factor—Molina's repeated illegal entries into this country—is relevant to sentencing because of the identity between these past crimes and the offense of conviction in this case. It is true, as Molina points out, that the Sentencing Commission "considered" a defendant's past criminal acts through the "criminal history" provisions of Chapter Four of the Guidelines. What those provisions do not take into account, however, is *the presence of sim-*

*ilarity between a defendant's current and past crimes.* As explained by the Seventh Circuit,

> [T]he Guidelines treat all prior convictions equally whether or not they are similar to the offense for which a defendant is being sentenced. Rationally, if a defendant has been convicted for the same offense more than once, he has demonstrated the need for greater sanctions to deter him from committing that same crime again—greater sanctions than might be required for a defendant who has never been convicted of a similar offense.

*United States v. Schmude,* 901 F.2d 555, 559 (7th Cir.1990). The other courts of appeals that have addressed the issue have found this reasoning persuasive and held that repeated commission of the same crime is an appropriate ground for upward departure. *See United States v. Aymelek,* 926 F.2d 64, 74 (1st Cir.1991); *United States v. Montenegro–Rojo,* 908 F.2d 425, 429 (9th Cir.1990); *United States v. Jackson,* 903 F.2d 1313, 1320 (10th Cir.), *modified on rehearing en banc,* 921 F.2d 985 (10th Cir.1990); *United States v. Carey,* 898 F.2d 642, 646 (8th Cir.1990); *United States v. De Luna–Trujillo,* 868 F.2d 122, 125 (5th Cir.1989).

We are convinced that, at least in the circumstances of this case, offense similarity is a permissible basis for enhancement. As the District Court noted, it is very likely that an alien who surreptitiously enters the country on five occasions, despite criminal sanctions and repeated deportation, will do so again; therefore, an enhanced sentence is required for reasons of specific deterrence and incapacitation. *See Aymelek,* 926 F.2d at 74 (upholding enhancement based on repeated commission of immigration offenses); *United States v. Chavez–Botello,* 905 F.2d 279, 281 (9th Cir.1990) (same). Accordingly, we conclude that the District Court's first stated ground for departure was appropriate.[6]

---

**4.** That adjustment was added in this case. *See* PSR at 8; note 1, *supra.*

**5.** *See* p. 520, *infra.*

**6.** Molina posits that his repeated illegal entries into the United States cannot be a valid ground for departure because that circumstance was considered by the Sentencing Commission in

■ That at least one of the factors relied upon by the District Court is an appropriate ground for departure does not, of course, end our inquiry. When a sentencing court relies on both proper and improper grounds in departing from the Guidelines, we can affirm the sentence imposed only if the trial court's reliance on the improper ground was "harmless" under the three-part test adopted by this court in *United States v. Jones,* 948 F.2d 732 (D.C.Cir.1991). Under *Jones,* we ask: (1) whether the direction and degree of the departure are reasonable in relation to the valid ground(s); (2) whether excision of the improper ground will obscure or defeat the sentencing rationale of the District Court; and (3) whether, viewing the record as a whole, we are left with the "definite and firm conviction" that the District Court would impose the same sentence on remand even without considering the improper ground. *Id.,* at 741.

■ In this case, the *Jones* harmlessness test is not satisfied. Even assuming, *arguendo,* that the first prong of the test has been met, it is clear here that the District Court provided no indication of the weight that it accorded to the various departure factors. Thus, we are unable to say with certainty that excision of the improper grounds would not defeat the District Court's sentencing rationale, or that the trial court would impose the same sentence absent consideration of those grounds. Accordingly, we must vacate Molina's sentence and remand for resentencing.

Our conclusion that remand is required is buttressed by our concern that Molina's

extensive criminal record—the second factor relied upon by the District Court and a ground urged by the Government for affirmance—may not provide a permissible basis for departure in this case. The Guidelines permit an upward departure on criminal history grounds "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3, p.s. In this case, it appears that the PSR took into account all of Molina's relevant prior convictions, save one, in computing his criminal history category[7]; as such, it is not clear why the District Court believed that Molina's criminal history category underrepresented his past criminal conduct. On remand, if the Government continues to rely on this factor, the District Court must explain why Molina's record was sufficiently unique to justify departure under the rubric of extensiveness.

## B. *Extent of the Departure*

Molina also challenges the degree of the District Court's departure from the Guidelines, claiming that there was no basis for the trial court's decision to sentence him at a level *beyond* the range corresponding to the highest Guideline criminal history category. Reviewing the sentence imposed for reasonableness, *see* 18 U.S.C. § 3742(e)(3) (1988), we find merit in Molina's assertion that the District Court failed to justify adequately the length of the sentence imposed.

Application Note 2 to U.S.S.G. § 2L1.2, which states that a sentence "at or near the maximum" of the applicable Guideline range is appropriate for defendants "with repeated prior instances of deportation *without criminal conviction.*" U.S.S.G. § 2L1.2, comment. (n. 2) (emphasis added). The Note, on its face, has no application here, because Molina has been deported *after* criminal convictions for illegal entry on two occasions.

7. The Guidelines assign criminal history points on the basis of prior sentences of imprisonment, not prior convictions *per se. See* U.S.S.G. § 4A1.1, comment. (backg'd.). Molina asserts, and the Government does not deny, that the

only prior sentence not used in calculating his criminal history category was a twelve-day sentence imposed by a Texas state court in 1984 for possession of marijuana. *See* Brief of Appellant at 10–11. This sentence could have added, at most, one point to Molina's criminal history score. *See* U.S.S.G. § 4A1.1(c).

The PSR also noted that Molina previously had been convicted of "theft under $5, theft under $20, [and] paint sniffing" but did not provide any information regarding when these convictions occurred or what sentence, if any, was imposed. *See* PSR at 8. If the District Court relied on these apparently minor offenses in deciding to depart, it must explain its reasons for doing so on remand.

The District Court, having decided that the period of incarceration provided for by the Guidelines was inadequate, departed upward to the statutory maximum of five years' imprisonment. The trial court explained the extent of the departure as follows:

> [A]fter considering the various standards that have been applied by the guidelines in reaching the various degrees of punishment for various offenses, considering the unusual and quite special factors in this case which take it clearly outside the guidelines and attempting as best the court can to project those beyond what the guidelines project to take into account his [Molina's] unusual and serious circumstances[,] the court is determined that he must serve the maximum penalty in this case of five years and I impose a sentence of five years. There will be a three year special supervised release thereafter.

Tr. at 11.

■ In *United States v. Burns*, 893 F.2d 1343, 1347 (D.C.Cir.1990), *rev'd on other grounds*, —— U.S. ——, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991), we applied the "arbitrary or capricious" standard in assessing the reasonableness of the degree of the sentencing court's departure from the Guidelines. We concluded that this standard accorded proper deference to the informed judgment of the district judge, who is "best situated to decide the length of the sentence." *Id.* Our adoption of the "arbitrary or capricious" standard does not mean, however, that a district court's discretion is unfettered or that impressionistic departure decisions will be upheld. A district court's responsibility to respect the Guidelines' underlying policies of uniformity and proportionality in sentencing does not end when the court departs from the sentencing grid; indeed, that responsibility becomes more weighty because it is unguided departures that pose the greatest danger of undermining sentencing uniformity. *See United States v. Jackson*, 921 F.2d 985, 989 (10th Cir.1990) (en banc). As the Seventh Circuit has aptly observed, "A

judge may not say: 'I have decided to depart, so I now throw away the guidelines.'" *United States v. Ferra*, 900 F.2d 1057, 1061–62 (7th Cir.1990).

In *United States v. Allen*, 898 F.2d 203, 204 (D.C.Cir.1990) (per curiam), we prescribed a procedure for district courts to follow in departing on criminal history grounds. Tracking the language of the Guidelines, we held that the trial court should "use, as a reference, the guideline range for a defendant with a higher or lower criminal history category." *Id.* In this case, of course, the District Court was unable to utilize the *Allen* procedure because Molina was already in the highest criminal history category. Neither *Allen* nor the Guidelines provide much guidance in these circumstances. *See id.;* U.S.S.G. § 4A1.3, p.s. (permitting departure upward from category VI where defendant has "egregious, serious criminal record," but providing no method for determining extent of departure).

Outside this circuit, other courts of appeals have differed over the precise procedure to be used by the district courts in departing above criminal history category VI. *See generally* Bruce M. Selya & Matthew R. Kipp, *An Examination of Emerging Departure Jurisprudence Under the Federal Sentencing Guidelines*, 67 NOTRE DAME L.R. 1, 41–43 (1991). The Seventh Circuit has suggested two procedures for post-category VI departures: a "percentage" approach, and a "vertical departure" approach. Under the "percentage" approach, the trial court determines how many additional criminal history categories a defendant's past criminal conduct would warrant, and then enhances the Guideline sentence by ten to fifteen percent—the marginal increase between successive criminal history categories in the Sentencing Table—for each such additional category. *See Schmude*, 901 F.2d at 560. The "vertical departure" approach focuses on the other axis of the sentencing grid—it permits the trial court to move vertically to higher offense levels when the available criminal history categories have been exhausted.[8]

---

**8.** Some courts have criticized the "vertical departure" approach on the ground that it improp-

*See Ferra,* 900 F.2d at 1062. The Tenth Circuit has endorsed the Seventh Circuit's "percentage" approach, and has also suggested the appropriateness of an analogy to the career offender provisions of the Guidelines in post-category VI departure cases. *Jackson,* 921 F.2d at 993. Other courts have rejected any bright line rule, opting instead to leave the appropriate degree of departure to the district court's discretion, subject to review for reasonableness under the circumstances. *See United States v. Ocasio,* 914 F.2d 330, 336–37 (1st Cir.1990); *United States v. Roberson,* 872 F.2d 597, 607 (5th Cir.), *cert. denied,* 493 U.S. 861, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989).

As one court has wisely observed, the diversity of approaches in the circuits suggests that "the criteria to use in departing upward from criminal history category VI will have to evolve under the tutelage of experience." *United States v. Gardner,* 905 F.2d 1432, 1438 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 202, 112 L.Ed.2d 163 (1990). On the face of it, the Seventh Circuit's "percentage" approach appears to make the most sense, but we agree that caution is in order and therefore decline to adopt any specific procedure for use by sentencing courts in determining the appropriate extent of departure above criminal history category VI. Consistent with the underlying rationale of the cases discussed above, however, we hold that the trial courts must supply *some* reasoned basis for the extent of post-category VI departures. *See United States v. Lira–Barraza,* 941 F.2d 745, 750–51 (9th Cir. 1991) (en banc); *United States v. Boula,* 932 F.2d 651, 657–58 (7th Cir.1991); *Jackson,* 921 F.2d at 989; *Ocasio,* 914 F.2d at 337.

■ As we have noted, the "percentage" approach recommended by the Seventh Cir-

cuit provides one appropriate model, and the Tenth Circuit's suggested analogy to the Guidelines' career offender provisions may have merit in certain cases. We mandate neither approach, but we do require that sentencing judges follow some reasonable methodology, consistent with the purposes and structure of the Guidelines, in determining what sentence to impose when departing above criminal history category VI. This requirement will facilitate our review of the reasonableness of such departures and will help to ensure that the Guidelines' underlying policies are preserved when the sentencing court moves into terrain uncharted by the Guidelines themselves.

■ In this case, the District Court did not follow any discernible methodology in departing to the statutory maximum; rather, the trial court simply stated that the "unusual and quite special factors" in this case warranted a five-year sentence. Tr. at 11. This explanation does not satisfy the reasoned basis requirement. Therefore, reconsideration of the extent of departure will be required on remand.[9]

### C. *The Ex Post Facto Issue*

■ Finally, an *ex post facto* issue, not raised by the parties, lurks in this case. The issue arises because Molina was sentenced under a Guideline that was amended after he illegally entered the United States. The *ex post facto* issue must be addressed by the District Court on remand.

Defendants are normally sentenced pursuant to the Guidelines that are in effect on the date of sentencing. *See* 18 U.S.C. § 3553(a)(4) (1988); *Aymelek,* 926 F.2d at 66 n. 1; *United States v. Lam Kwong–Wah,* 924 F.2d 298, 304 (D.C.Cir.1991). However, when an amendment to a Guide-

---

erly intertwines criminal history and offense level considerations, thereby "skew[ing] the balancing of factors which the Commission created in the Sentencing Table." *United States v. Roberson,* 872 F.2d 597, 608 (5th Cir.), *cert. denied,* 493 U.S. 861, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989); *see also United States v. Bernhardt,* 905 F.2d 343, 345 (10th Cir.1990) (same). Our opinion in *Jones* lends some support to this critique. *See Jones,* 948 F.2d at 739 ("[T]he Guidelines assume a basic dichotomy between conduct that

is related to the current offense and conduct that is part of the defendant's criminal history.").

**9.** We express no opinion as to whether a five-year sentence is warranted on the facts of this case. It may be that the extent of the departure is justifiable; we hold only that it has not been justified.

line increases the punishment imposed, the *ex post facto* clause of the Constitution prevents retroactive application of the amended Guideline to crimes committed prior to the effective date of the amendment. *See* U.S. CONST. art. I, § 9, cl. 3; *see also Miller v. Florida*, 482 U.S. 423, 429–35, 107 S.Ct. 2446, 2450–54, 96 L.Ed.2d 351 (1987); *United States v. Green*, 952 F.2d 414, 415–16 (D.C.Cir.1991); *Lam Kwong-Wah*, 924 F.2d at 304.

In this case, Molina pled guilty to the crime of illegally entering the United States, the penalty for which is governed by U.S.S.G. § 2L1.2. Pursuant to subsection (b)(1) of that section,[10] the District Court increased Molina's base offense level by four levels because Molina previously had been deported after conviction of a non-immigration felony. *See* PSR at 4. Subsection (b)(1) was added to section 2L1.2 by amendment effective November 1, 1989. *See* U.S.S.G.App. C, note 193. According to the PSR, however, Molina actually entered the United States in May 1989—some six months before the amendment took effect. *See* PSR at 3. Therein lies the potential *ex post facto* problem in this case.

Because the trial court and the parties failed to consider this *ex post facto* issue, we leave its resolution in the first instance to the District Court on remand.

### III. CONCLUSION

For the reasons set forth above, we vacate the sentence imposed by the District Court. We hold that the District Court erred by relying on improper factors in departing from the Guidelines, and that the trial court failed to provide a reasoned basis for the extent of its departure. We remand for resentencing and for consideration of the *ex post facto* issue identified in this opinion.

*So ordered.*

---

**10.** Subsection (b)(1) provides:
   If the defendant previously was deported after a conviction for a felony, other than a felony involving violation of the immigration laws, increase by **4** levels.
   U.S.S.G. § 2L1.2(b)(1) (emphasis in original).