**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 98-4102

DUANE FREDERIC BENTLEY,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CR-97-117)

Submitted: August 31, 1998

Decided: November 13, 1998

Before WILLIAMS and MICHAEL, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

William Arthur Webb, Federal Public Defender, Robert H. Hale,
Assistant Federal Public Defender, Raleigh, North Carolina, for
Appellant. Janice McKenzie Cole, United States Attorney, Anne M.
Hayes, Assistant United States Attorney, Banumathi Rangarajan,
Assistant United States Attorney, Raleigh, North Carolina, for Appel-
lee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Duane Frederic Bentley appeals the 21-month sentence he received after he pled guilty to theft of mail, see 18 U.S.C. § 1708 (1994), and aiding and abetting, see 18 U.S.C. § 2 (1994). He maintains that the district court plainly erred by including as relevant conduct in the loss determination offenses which were not "of a character for which § 3D1.2(d) would require grouping of multiple counts," see USSG §§ 1B1.3(a)(2), 2B1.1.**1** He also contends that the district court clearly erred in finding that the other offenses were part of the same course of conduct or a common scheme or plan as the offense of conviction. We affirm.

In July 1997, Bentley and an accomplice were arrested in the act of stealing mail from the mailbox of Sandra and Stephen Byrd. The Byrds had contacted postal authorities after they learned that someone was applying for credit cards in their name. A search of Bentley's van revealed mail stolen from the Byrds and from others, stolen credit cards and information relating to credit card accounts, completed and partially completed credit card applications, as well as stolen checks, stolen jewelry, and information providing the addresses of twenty-five people. In his interview with the probation officer, Bentley admitted stealing personal information from the Byrds' home in February 1996. He also admitted breaking into several other homes and stealing credit cards and personal information.

The probation officer recommended that Bentley be held responsible for a loss of $27,682.14. This amount included $22,082.14 in charges on stolen credit cards, an additional $1800 for unused cards ($100 per card for stolen credit cards which were unused or had charges of less than $100), and $3800 for stolen jewelry.

_____

**1** **U.S. Sentencing Guidelines Manual** (1997).

2

Bentley objected that only losses sustained on the credit cards taken from the Byrds during July 1997 should be used to calculate his sentence because the other losses resulted from conduct which was separate or of a different nature from the offense of conviction and not part of the same course of conduct or common scheme or plan as the offense of conviction. However, at sentencing, the district court found that all the included conduct was part of a common scheme or plan or the same course of conduct.

On appeal, Bentley contends that the district court erred as a matter of law when it included losses incurred through offenses which would not have been grouped under USSG § 3D1.2(d), had there been multiple counts of conviction, because the other charges would have been burglaries, which are specifically excluded from grouping under USSG § 3D1.2(d). He also maintains that his theft of mail from the Byrds and his other criminal conduct were not part of a common scheme or plan or the same course of conduct.

Guideline section 1B1.3(a)(2) provides that, "solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts," relevant conduct includes "all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction." Section 3D1.2(d) requires that multiple counts be placed in a single group

> [w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

Certain offenses, including burglaries, are specifically excluded from grouping under USSG § 3D1.2(d). Thefts, however, are specifically included. Because he was charged with breaking and entering in state court in connection with his theft of credit cards and jewelry, Bentley argues that the district court should have excluded from his relevant conduct (1) the value of the stolen jewelry, (2) the losses attributed to unused credit cards, and (3) the losses resulting from his

3

use of stolen credit cards.**2** Because Bentley did not make this specific argument in the district court, we review this portion of his appeal under the plain error standard. See United States v. Olano, 507 U.S. 725, 732 (1993).

We read USSG § 1B1.3(a)(2) as being focused on the nature of the offense of conviction, rather than on the nature of other conduct which may be considered relevant conduct. Thus, if the offense of conviction is one which, when there are multiple counts, would be grouped under USSG § 3D1.2(d), then other conduct which was part of a common scheme or plan or the same course of conduct is to be treated as relevant conduct. The other conduct need not be offenses which would also be groupable under USSG § 3D1.2(d). Therefore, Bentley's first argument is without merit.

Two or more offenses constitute a common scheme or plan when they are connected by a common factor such as common victims, common accomplices, common purpose, or similar modus operandi. USSG § 1B1.3, comment. (n.9(A)). Offenses which are not part of a common scheme or plan may be part of the same course of conduct if they are part of a single episode, spree, or ongoing series of offenses. Factors to be considered are (1) the similarity of the offenses, (2) the regularity (repetitions) of the offenses, and (3) the temporal proximity of the offenses. USSG § 1B1.3, comment. (n.9(B)). See also United States v. Mullins, 971 F.2d 1138, 1144 (4th Cir. 1992) (similarity, regularity, and temporal proximity test for both common scheme or plan and same course of conduct reviewed for clear error when district court makes factual finding).

Bentley argues that all conduct which was not theft from a mailbox (the offense of conviction) is dissimilar enough that it should not have been considered either part of a common scheme or plan or the same course of conduct. He relies on United States v. Pinnick, 47 F.3d 434, 439 (D.C. Cir. 1995) (finding that counterfeit check offenses were of a different nature from credit card fraud and separate under the facts

_____

**2** Breaking and entering may constitute "generic" burglary; the elements are unlawful or unprivileged entry into or remaining in a building or other structure with the intent to commit a crime. See Taylor v. United States, 495 U.S. 575 (1990).

4

of the case), and <u>United States v. Jones</u>, 948 F.2d 732, 737-38 (D.C. Cir. 1991) (making same finding to distinguish credit card and wire fraud offenses from art embezzlement).

We agree with the district court that all of Bentley's offenses were part of the same course of conduct because they were part of an ongoing series of offenses carried on between February 1996 and July 1997. For the offenses involving credit cards, the district court's finding of a common scheme or plan is supported by Bentley's use of a similar modus operandi--the theft of either a credit card or information used to obtain a credit card by fraud. The court's finding that the credit card offenses were all part of the same course of conduct also meets the test set out in Application Note 9(B). The offenses were similar. They were committed within a relatively short period of time. And they were committed with some regularity--a new offense every few months.

Even if we were to find, under <u>Pinnick</u> and <u>Jones</u>, that Bentley's thefts of jewelry and his theft and use of checks belonging to one of the victims were offenses not of the same nature as the credit card offenses, i.e., lacking in similarity and regularity, we would affirm the sentence. If the value of the stolen jewelry ($3800) and the loss incurred through the checks ($3400) were subtracted from the total loss recommended in the presentence report ($27,682.14), a loss of $20,482 would remain and the six-level enhancement for loss would be unaffected. <u>See</u> USSG § 2B1.1(b)(1)(G) (loss between $20,000 and $40,000).

We therefore affirm the sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

5