UNITED STATES of America, Appellee,

v.

**Thomas L. ROOT, Appellant.**

No. 92–3034.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 23, 1993.

Decided Jan. 7, 1994.

Steven C. Root, Washington, DC, of the bar of the District of Columbia Court of Appeals, pro hac vice, by special leave of Court, argued the cause for appellant. On the brief was Thomas L. Root, Washington, DC.

Daniel M. Zachem, Asst. U.S. Atty., Dept. of Justice, Washington, DC, argued the cause, for appellee. With him on the brief

were J. Ramsey Johnson, U.S. Atty., John R. Fisher, Elizabeth Trosman, Blanche L. Bruce and Steven D. Mellin, Asst. U.S. Attys., Washington, DC.

Before: EDWARDS, SILBERMAN, Circuit Judges, and OAKES,* Senior Circuit Judge, United States Court of Appeals for the Second Circuit.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

Appellant Thomas L. Root pled guilty to a total of six counts of fraudulent activity in connection with his practice as an attorney before the Federal Communications Commission ("FCC"). The District Court sentenced appellant to concurrent terms of thirty-three months' imprisonment on each of the counts. Appellant challenges the court's decision to add two points to his base offense level under the United States Sentencing Guidelines ("Guidelines"), a departure which increased his sentence by six months. Because we conclude that the upward departure reasonably was based on appellant's disruption of governmental functions, we affirm his sentence.

I. BACKGROUND

Appellant practiced law in Washington, D.C. from 1979 to 1990. The founder and sole proprietor of a small law firm bearing his name, appellant specialized in representing clients before the FCC. On March 21, 1990, appellant was indicted on thirty-three counts of fraudulent activity in connection with his law practice; the charges included wire fraud, mail fraud, forgery and tampering with a grand jury witness.

On June 5, 1990, appellant pled guilty to three counts of wire fraud in violation of 18 U.S.C. § 1343 (1988), and two counts of altering or forging public records in violation of 18 U.S.C. § 494 (1988).[1] Each of these counts corresponds to appellant's conduct in

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. A second indictment was filed on September 10, 1990, charging appellant with four additional criminal counts. Appellant subsequently pled

guilty to one count of transporting stolen goods or securities in violation of 18 U.S.C. § 2314 (1988). Appellant has raised no challenges with respect to this count.

the course of representing one of the following five organizations—Northern Missouri Christian Broadcasting, Inc. ("NMCB"), Holy Spirit FM Limited Partnership, CM Broadcasting Limited Partnership, Louisburg FM Limited Partnership ("Louisburg"), and Timothy FM Limited Partnership ("Timothy"). These organizations all sought to obtain FCC licenses to operate FM radio stations in various locations. Appellant admitted to a host of fraudulent conduct in the course of those representations, including forging the signatures of his clients and of administrative law judges ("ALJs"), dismissing his clients' applications without their consent, lying to his clients, and drafting phony Federal Aviation Administration ("FAA") documents purporting to establish that a radio tower could be built at a proposed site without endangering air traffic. In order to resolve the matter in issue on this appeal, it will be sufficient for us to focus solely on the conduct underlying appellant's guilty pleas with respect to the Louisburg and Timothy license applications.

Appellant was hired in 1987 to represent Louisburg in its quest for a license to operate a radio station in Louisburg, North Carolina. After a number of parties had filed applications, Franklin Broadcasting ("Franklin"), one of Louisburg's competitors, offered to pay $10,000 if Louisburg would dismiss its application. Appellant discussed the offer with Ervin Hester, Louisburg's general partner, but Hester refused to settle for less than $50,000. Appellant then purportedly secured a promise that Sonrise Management Services, Inc., the company that had formed the Louisburg investment partnership, would make up the $40,000 difference between Franklin's offer and Hester's demand. Without disclosing this promise, however, appellant represented to Hester that Franklin was willing to pay the entire $50,000. Appellant then forged Hester's signature on the actual $10,000 settlement agreement drafted by Franklin. On March 14, 1989, Franklin filed

the agreement bearing that forged signature with the FCC, pursuant to which the ALJ dismissed Louisburg's application.

In the Timothy matter, appellant represented the Timothy FM Limited Partnership in its bid for a license to operate a radio station near Charlottesville, Virginia. In that matter, McClenehan Broadcasting, Inc. ("McClenehan"), one of Timothy's competitors, raised questions before the FCC concerning the true party-in-interest behind Timothy's application. McClenehan sought to depose appellant on that and other issues. On February 27, 1989, the morning on which appellant's deposition was scheduled, appellant faxed a motion to McClenehan's counsel stating that Timothy voluntarily sought to dismiss its application. Appellant had not secured Timothy's approval of any dismissal, so he again forged his client's signature on the document. This forged document was transmitted to McClenehan's representative. McClenehan subsequently requested that the FCC dismiss Timothy's application, and it appended appellant's falsified document to its request.

Following the entry of appellant's guilty plea, the United States Probation Department prepared a lengthy Presentence Report ("PSR"). It calculated appellant's total offense level under the Guidelines to be 18, which, given appellant's lack of a criminal history, corresponded to an imprisonment range of 27 to 33 months.[2] PSR at 25, *reprinted in* Record Material for Appellee ("Rec. Mat.") 176. The PSR noted that the following two factors could warrant an upward departure under sections 5K2.7 and 5K2.0 of the Guidelines, respectively: (1) disruption of the normal operations of the FCC as a result of appellant's fraudulent conduct, and (2) consequential monetary losses suffered by appellant's victims and not accounted for in the baseline sentence calculation. *Id.* at 33.

---

**2.** The PSR arrived at a total offense level of 18 as follows: base offense level under Guidelines § 2F1.1(a) for crimes of fraud and deceit (6); adjustment for $120,382.54 in direct monetary losses to victims of appellant's conduct (+ 6); adjustment for more than minimal planning (+ 2); adjustment for use of special skills as an

attorney to defraud others (+ 2); and adjustment for obstruction of justice (+ 2). *See* PSR at 23, *reprinted in* Record Material for Appellee ("Rec. Mat.") 174–75. The PSR denied any downward adjustment for acceptance of responsibility. *See id.* at 24.

On January 17, 1992, after hearings and extensive briefing on various sentencing issues, including the appropriateness of an upward departure, the District Court announced appellant's sentence. The court agreed with the offense level calculated in the PSR, except that it held appellant was entitled to a two-level reduction for acceptance of responsibility, thus bringing the total level down to 16. Transcript of Sentence ("Tr.") at 3, *reprinted in* Joint Appendix ("J.A.") 76. The court further determined that a two-level upward departure from the Guidelines was warranted. The court stated:

[t]here's no question in the court's mind that the activities of the defendant in this case have amounted to a substantial disruption to government function, and not only that, that the loss in this case, even the $120,000, does not adequately reflect the loss or damage to other persons. *Id.* at 4.

[Following arguments by counsel:] But there's no question in my mind, Mr. Root, that, as [the prosecutor] has indicated, you have really done very serious damage by your activity to the governmental process, to the administrative law process. I think in one of the instances, and I forget the names now, involving a radio tower, theoretically at least, based upon what you did, there could have been a radio tower constructed which shouldn't be there, which could have had an effect on other people.

[A]s counsel has pointed out, you went into practice, people looked to you for advice, they trusted you, and there's no question you let them down. You forged names, their names on occasion, the names of judges, administrative law judges; you must have, of course, lied to your clients; the bogus certificates: I just don't know where you were going.

*Id.* at 15–16. Concluding that he had "taken everything into consideration," the District Judge sentenced appellant to serve concurrent terms of 33 months on each of the six counts to which he had pled guilty, to be followed by three years of supervised release. *Id.* at 19. The District Judge added that he would file more detailed findings if the parties so desired. *Id.* at 21.

Although neither party appears to have requested additional findings, the court *sua sponte* placed a memorandum in appellant's file, which amplified on the sentencing decision, in relevant part, as follows:

The Court further concludes that it should depart upward by 2 points based upon disruption of a governmental function and further because the guideline does not adequately reflect the loss and damage in this case.... [T]he defendant's action resulted in a significant disruption of a governmental function. These relates [sic] to the defendant's action is [sic] forging the signature of an Administrative Law Judge in an FCC proceeding and similar actions.... Persons who placed their trust in him and sought his assistance in seeking to obtain licenses with the FCC found themselves left out in the cold. The harm he caused and the potential harm he could have caused is substantial.

Sentencing Memorandum ("Mem.") at 1–2, *reprinted in* J.A. 112–13.

## II. ANALYSIS

Appellant challenges the propriety of the District Court's upward departure on several fronts. First, he claims that the court failed to state adequately the grounds for its departure from the Guidelines. Second, appellant argues that a departure on the basis of disruption of a governmental function is insupportable because the Government failed to demonstrate unusual or extraordinary circumstances, as is required when some degree of disruption is inherent in the nature of the offense to which appellant pled guilty. Finally, appellant urges that departure on the basis of consequential losses suffered by the victims of his conduct is improper both because the District Court failed to give notice of its intention to depart on that ground, and because the record does not support a "valuation" departure.

We find it unnecessary to reach appellant's arguments concerning the valuation rationale and the inherency problem. Rather, our limited holding here is that the upward departure imposed in this case is fully justified on the ground that appellant's conduct in connection with the wire fraud counts caused a

significant disruption of governmental functions. Accordingly, we affirm appellant's sentence.

### A. Standard of Review

Upward departures are justified where the District Court "finds that there exists an aggravating ... circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." 18 U.S.C. § 3553(b) (1988). As the Supreme Court recently held, appellate review of sentencing departures is narrow in scope and entails two distinct inquiries:

> First, was the sentence imposed either in violation of law or as a result of an incorrect application of the Guidelines? If so, a remand is required under [18 U.S.C.] § 3742(f)(1). If the court concludes that the departure is not the result of an error in interpreting the Guidelines, it should proceed to the second step: is the resulting sentence an unreasonably high or low departure from the relevant guideline range? If so, a remand is required under § 3742(f)(2).

*Williams v. United States,* —— U.S. ——, ——, 112 S.Ct. 1112, 1120, 117 L.Ed.2d 341 (1992); *see also United States v. Perkins,* 963 F.2d 1523, 1525 (D.C.Cir.1992) (applying *Williams* standard).

■ Anticipating *Williams,* our earlier cases have treated the first step of the inquiry as consisting of two parts: first, whether the District Court's grounds for departure "are, as a matter of law, of a kind or degree that may appropriately be relied upon to justify departure" and second, "whether the facts supporting the [court's] reasoning are clearly erroneous." *United States v. Jones,* 948 F.2d 732, 736 (D.C.Cir.1991) (internal quotations omitted); *see also United States v. Ogbeide,* 911 F.2d 793, 795 (D.C.Cir.1990) (same). Finally, we assess the reasonableness of the degree of the departure—step two of the *Williams* analysis—under the arbitrary and capricious standard. *United States v. Burns,* 893 F.2d 1343, 1347 (D.C.Cir.1990), *rev'd on other grounds,* 501 U.S. 129, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991).

### B. District Court's Statement of Its Grounds for Departure

■ Appellant argues that the District Court failed to meet its statutory obligation to "state in open court the reasons for its imposition of the particular sentence," including "the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2) (1988); *see also Perkins,* 963 F.2d at 1526. We reject this contention as meritless.

Section 5K2.7 of the Guidelines provides:

> If the defendant's conduct resulted in a significant disruption of a governmental function, the court may increase the sentence above the authorized guideline range to reflect the nature and extent of the disruption and the importance of the governmental function affected. Departure from the guidelines ordinarily would not be justified ... [in cases where] interference with a governmental function is inherent in the offense, and unless the circumstances are unusual the guidelines will reflect the appropriate punishment for such interference.

U.S.S.G. § 5K2.7. As we read the record, the District Court clearly stated more than once that the upward departure was based on the "substantial disruption" and "serious damage" to governmental functions wrought by appellant's criminal conduct. Tr. at 4, 15. Although the court did not refer separately to the conduct underlying each count, it identified the following specific forms of conduct which, in the trial court's view, disrupted governmental operations: forging the names of clients and of ALJs, lying to clients, and drafting bogus governmental certificates. *See id.* at 16. Moreover, the trial court also specifically identified (albeit not by the client's name) the NMCB matter, in which appellant prepared and filed with the FCC counterfeit FAA documents purporting to warrant that NMCB's proposed radio tower could be built without hazard to air traffic. *See id.* at 15–16.

It is doubtless true that the District Court could have elaborated further on the factual bases for its departure and perhaps drawn

more explicitly the connection between appellant's conduct and the resulting disruption of governmental functions; but it requires neither speculation nor imagination to understand how drafting phony agency documents, forging ALJ signatures, and submitting pleadings with forged client signatures, disrupt the functions of a governmental agency. This case is therefore distinguishable from our decision in *Ogbeide,* on which appellant relies. There, the defendant was charged with possession of unauthorized credit cards with intent to defraud. In imposing an upward departure, the trial court merely stated, without explanation, that the available figures in the record did not adequately represent the true losses to the victims, and that the defendant possessed the credit cards in order to facilitate or conceal the commission of another offense. *Ogbeide,* 911 F.2d at 794–95. On appeal, we held that the trial court's statement did not suffice to justify the departure. In particular, we noted that the District Court did no more than parrot the language of the Guidelines without tying the law to the facts before it. *Id.* at 795. Moreover, because the record in *Ogbeide* indicated no other offense the defendant might be facilitating or concealing, we were left to speculate on what the trial court meant. *Id.* at 796. In contrast, the District Court's explanation of its grounds for departure in the instant case was substantially more detailed, and specifically linked appellant's conduct to the Guidelines provision.

We agree with appellant's contention that the District Court failed to explain adequately its reliance on the valuation rationale as a basis for the upward departure. The sentencing transcript and the post-sentencing memorandum each contain only one reference to that rationale, *see* Tr. at 4; Mem. at 1, and in neither instance did the District Court elaborate on its reference. This failure is not fatal, however, for we hold that the trial court adequately explained its decision to depart on the basis of disruption of governmental functions, and, as we explain below, appellant's sentence can be affirmed solely on that ground. Thus, we need not address appellant's further contention that the District Court failed to give notice of

intent to depart on the grounds of valuation for consequential losses.

## C. Adequacy of the Grounds for Departure

### 1. The Inherency Argument

Appellant next notes that, with respect to the adequacy of the grounds for departure, if the factor supporting departure already is taken into account in the applicable offense guideline (*i.e.* if it *inheres* in the offense of conviction), then departure "is warranted only if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense." U.S.S.G. § 5K2.0. By way of example, the Guidelines state that disruption of a governmental function "would have to be quite serious to warrant departure" when the underlying offense is bribery or obstruction of justice, but not so if the offense were theft. *See id.; see also id.* § 5K2.7 (same). Appellant argues that disruption of governmental functions is inherent in 18 U.S.C. § 494, the statute underlying two of the counts to which he pled guilty. That statute provides, *inter alia,* that it is a crime to falsely make, alter, forge or counterfeit any public record for the purpose of defrauding the United States, or to knowingly present such a record to any office or officer of the United States. *See* 18 U.S.C. § 494 (1988). Thus, appellant contends that the disruption resulting from his conduct must have been unusually serious, and that the Government has not borne its burden of demonstrating such disruption.

■ This "inherency" issue raises difficult statutory and factual questions. However, because the issue is not critical to the disposition of this appeal, we decline to reach it. Even assuming, *arguendo,* that the District Court erred in relying on any governmental disruption stemming from conduct related to the section 494 counts, we nonetheless may affirm appellant's sentence. Remand is not automatically required when a trial court has relied in part on improper factors in reaching a sentence under the Guidelines. Rather, we may affirm such a sentence if we determine "on the record as a whole, that the error was harmless, *i.e.,* that the error did not affect the district court's selection of the sentence imposed." *Williams,* —— U.S. ——, 112

S.Ct. at 1121; *see also United States v. Molina*, 952 F.2d 514, 520 (D.C.Cir.1992) (reviewing court must have "definite and firm" conviction that trial court would impose same sentence absent the improper ground).

### 2. The Wire Fraud Counts: Louisburg and Timothy

■ Having eliminated the section 494 counts and the valuation rationale, we now examine whether appellant's conduct in connection with the wire fraud counts resulted in significant disruption of governmental functions and, if so, whether such disruption is adequate to sustain the upward departure.[3] We conclude that appellant's conduct underlying two of the three wire fraud convictions indeed caused significant disruption of governmental functions, and we are confident that the District Court would have imposed the same two-level departure in this case on those grounds alone.

In both the Louisburg and Timothy matters, appellant admitted to having forged the signatures of his clients. In Louisburg, appellant's client insisted on being paid $50,000 by its competitor, Franklin, in exchange for dismissing its license application. Franklin, however, only offered $10,000 and, for reasons that are not entirely clear, appellant was determined to reach a settlement. To that end, appellant forged his client's signature on the $10,000 settlement agreement. Franklin thereafter filed the agreement with the FCC and Louisburg's application was dismissed. In Timothy, in an effort to avoid being deposed in connection with Timothy's license application, appellant forged his client's signature on a motion to dismiss the application and faxed that bogus document to McClenehan, Timothy's competitor. McClenehan subsequently filed a motion to dismiss Timothy's application, to which it appended the forged document. The ALJ granted McClenehan's motion.

The foregoing actions clearly caused a significant disruption of governmental functions.

The FCC is charged with the duty to select radio station licensees from among competing applicants, "if public convenience, interest, or necessity will be served thereby...." 47 U.S.C. § 307(a) (1988). The FCC necessarily depends on the representations of the parties themselves, and on the attorneys who represent them, to facilitate honest and fair adversarial proceedings that allow the agency to fulfill its statutory duty to choose the best qualified applicant. We cannot say that this process has not been significantly disrupted when the agency is led to dismiss possibly qualified applicants on the basis of forged documents.

It is of no moment that appellant did not personally file the documents bearing forged signatures with the FCC, for we believe that it was fully foreseeable that another party would do so. Indeed, we would go so far as to say it was *inevitable*, for in both the Louisburg and Timothy matters, appellant's forgeries were committed for the ultimate purpose of having his clients' applications dismissed. No stranger to the competitive world of broadcast license applications, appellant could have had no doubt that one of his clients' competitors would file the Louisburg settlement agreement and the Timothy motion for dismissal in the event that appellant himself did not. Thus, the mere fact that appellant did not personally present the forged documents to the FCC does not relieve him of responsibility for the ensuing disruption of governmental functions.

Moreover, our review of the District Court's sentencing transcript and memorandum leaves us with a "definite and firm conviction" that the District Judge would have imposed the same two-level departure absent any consideration of the section 494 counts or the valuation rationale. *See Jones*, 948 F.2d at 741. Although the court did mention one of the section 494 counts (the falsified FAA no-hazard acknowledgement), we think the context makes clear that the court meant to refer only to "*one of the instances*" in which appellant's activities had

---

**3.** The wire fraud statute makes it a crime to transmit by "wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing" a scheme or artifice to defraud. *See* 18 U.S.C. § 1343 (1988). By the statute's terms, no government entity need be involved, and appellant does not allege that any government entity was the *direct* victim of the conduct underlying the wire fraud counts. Thus, we confront no inherency problem here.

"done very serious damage ... to the governmental process." Tr. at 15 (emphasis added). We do not read that reference to suggest that the District Court attached pivotal significance to the FAA forgery, for, indeed, the court went on to identify specifically forging clients' names, lying to clients, forging ALJ names, and drafting phony certificates, as conduct justifying its departure. *See id.* at 16. We believe the District Court viewed appellant's various fraudulent acts, all of which occurred in connection with his representation of clients before the FCC, to be of one piece. Thus, the fact that we have excised the section 494 counts as a ground for departure "in no way obscures or defeats the basic reasoning of the district court." *Jones,* 948 F.2d at 741. *Compare Molina,* 952 F.2d at 520 (remanding for resentencing where trial court relied on six independent grounds for departure, because excision of some of those grounds might defeat court's sentencing rationale).

Finally, we assess whether the degree of the departure imposed is reasonable. In this case, the two-level departure added six months to appellant's maximum permissible sentence under the Guidelines. Such an enhancement clearly was reasonable, indeed, arguably modest, in light of the grounds for departing and the seriousness of appellant's conduct. *See Williams,* — U.S. —, 112 S.Ct. at 1121. Appellant *repeatedly* defiled his obligation as an attorney, betraying his clients' trust, misleading opponents and disrupting governmental functions, through deceitful and fraudulent practices, lies and forgeries. The District Court's upward departure was far from arbitrary and capricious. *Cf. Burns,* 893 F.2d at 1347 (60–month sentence for theft of government funds and tax evasion, which included upward departure of 23 months for disruption of governmental functions, not unreasonable).

### III.  CONCLUSION

For the foregoing reasons, we affirm the sentence imposed by the District Court.

*So ordered.*