UNITED STATES of America, Plaintiff,

v.

James Edward WALKER, Defendant.

No. 96–CR–84–H.

United States District Court,
N.D. Oklahoma.

July 2, 1997.

Jack Schisler, Federal Public Defender's Office, Tulsa, OK, Gary L. Richardson, Chadwick R. Richardson, Murray Llewellyn Bristol, Richardson & Ward, Tulsa, OK, for James Edward Walker, defendant.

John David Russell, U.S. Attorney, Tulsa, OK, for U.S.

## ORDER

HOLMES, District Judge.

This matter comes before the Court for the sentencing of Defendant following his plea of guilty to a one count Information on March 3, 1997. A presentence investigation report ("the PSR") was prepared by the U.S. Probation Office. Defendant objected to certain provisions of the PSR by letter dated May 19, 1997. In addition, by minute order of May 22, 1997, the Court directed the parties to submit briefs with respect to whether, under the facts present here, the Court could depart upward from the applicable sentencing guidelines pursuant to U.S.S.G. § 5K2.7 for disruption of governmental function. The Court has reviewed the parties' submissions and heard arguments on all issues on July 2, 1997.

### I.

The procedural history of Defendant's case is outlined in Part A, paragraphs one through six of the PSR. On March 3, 1997, Defendant pled guilty to a one count Information filed in the Northern District of Oklahoma. The Information stated in its entirety as follows:

From in or about March 1994 to on or about September 14, 1995, in the Northern District of Oklahoma and elsewhere, the defendant, JAMES EDWARD WALKER, acting together and aiding and abetting Michael A. O'Brien and others, knowingly, willfully, and unlawfully did conduct, finance, manage, supervise, direct, and own, or did cause to be conducted, financed, managed, supervised, directed, and owned, all or part of an illegal gambling business, the illegal gambling business having involved willfully conducting commercial gambling by setting up for use and/or collecting the proceeds of gambling devices, in violation of Title 21, Oklahoma Statutes, Sections 982.5 and 981.3, of the laws of the State of Oklahoma, in which the illegal gambling business was conducted; and which illegal gambling business involved, during the period stated above, five or more persons who conducted, financed, managed, supervised, directed, and owned all or part thereof, and which illegal gambling business remained in substantially continuous operation for a period in excess of thirty days.

In support of his plea of guilty, Defendant gave the following statement of facts pursuant to Rule 11:

THE COURT: All right. Tell the Court what you did, that is, state what acts you committed as well as when and where you committed them as they relate to the offenses to which you have pled guilty.

THE DEFENDANT: In early 1994 we become acquaintance of Mike O'Brien and his wife, me and my wife did. We went several places with Mr. and Mrs. O'Brien. Approximately March or April 1994, Mike O'Brien, I believe he came to the house and told me that he was wanting to set up a vending route in Miami, pool tables, vending machines, dart boards and things like that. Wanted to know if I knew any of the bar or club owners. I told him the only one I knew real well was a friend of mine who was Dee Baker and I did call

Dee Baker and set up a meeting with him and Mike O'Brien to set up vending machines.

THE COURT: When you say vending machines, the Information refers to illegal gambling business. Were you aware that these were illegal vending machines?

THE DEFENDANT: I had suspicion to believe that they would be illegal gambling machines, yes.

THE COURT: You believed them to be or you didn't believe them to be? The Information requires that they be illegal gambling business.

THE DEFENDANT: The way I figured they was probably going to use the video machines would be in an illegal manner, yes.

THE COURT: So you knew before you made the call that it was illegal gambling business?

THE DEFENDANT: Yes, sir.

THE COURT: You did?

THE DEFENDANT: I had reason to believe that that's probably what they would be used for.

THE COURT: Okay. So when you made the call you intended to cause Mr. Baker to install an illegal gambling machine in his establishment, was that your goal?

THE DEFENDANT: I wasn't sure what kind of machines he was going to set in there. He told me dart machines, pool tables and these Cherry Master machines, which I had reasonable cause to believe that they were being used for illegal gambling, yes, sir.

THE COURT: Well, the Information refers to an illegal gambling question. So my question to you is that when you made a call to him was it your purpose to have Mr. Baker install an illegal gambling device in his establishment?

THE DEFENDANT: Yes, sir.

THE COURT: Now why did you do it? Why did you make the call?

THE DEFENDANT: Because Mike O'Brien was my friend and Dee Baker was my friend.

THE COURT: So you did it by virtue solely of your friendship with Michael O'Brien?

THE DEFENDANT: Yes, sir.

THE COURT: And why did Dee Baker did it?

THE DEFENDANT: He was a friend of mine. We went to high school together.

THE COURT: So he did it by friendship with you, he installed an illegal gambling device in his business establishment?

THE DEFENDANT: That's right, yes, sir.

THE COURT: He made no money off of it?

THE DEFENDANT: I have no idea what transpired between Dee Baker and Mike O'Brien.

THE COURT: Did you make any money off of it?

THE DEFENDANT: No, sir.

THE COURT: *So basically based on your friendship you were prepared to make a telephone call to cause somebody to break the law, knowing in making that call and seeking that they install this illegal gambling device that you were breaking the law; right?*

THE DEFENDANT: *Yes, sir.*

THE COURT: *Did you consider at the time your oath as a sheriff, law enforcement official in Ottawa County, that by virtue of your friendship with Michael O'Brien, breaking the law yourself and causing others to break the law might be inconsistent with that oath?*

THE DEFENDANT: *No. sir. I didn't consider it at the time. I didn't even think about it at the time.*

THE COURT: *You didn't think about it at the time?*

THE DEFENDANT: *No. sir.*

THE COURT: *So when somebody raises breaking the law it's not something that comes to mind, your obligation as the sheriff, is that your response?*

THE DEFENDANT: *It just didn't cross my mind at that time, sir.*

(emphasis added).

## II.

■ Defendant has entered two objections to the PSR and has requested instead that the Court depart downward from the applica-

ble guidelines. First, Defendant objects to the enhancement of his base sentence pursuant to U.S.S.G. § 3B1.1. The PSR recommends that Defendant's base sentence be increased four levels because "the defendant was an organizer or leader of a criminal activity that involved five or more participants ...." U.S.S.G. § 3B1.1(a). Defendant objects to the conclusion in the report that he organized the conspiracy that gave rise to these matters. In support of his objection, Defendant claims that he pled guilty only to one count of "facilitating illegal gambling," and that the Information did not allege that he organized the conspiracy.

The Court finds that Defendant's characterization of his role is without merit. First, the Information itself expressly states that Defendant, among other things, "supervise[d]" and "direct[ed]" all or part of an illegal gambling business. (Docket No. 110 at 1.) The Information also states explicitly that such business involved five or more persons. Moreover, Defendant himself stated under oath that, after a meeting at his home with Michael O'Brien, he contacted and recruited Dee Baker to place an illegal gambling machine in Mr. Baker's place of business. Based on these factors, the other charges in the Information to which Defendant pled guilty, and the sworn statements by Defendant in support of his plea of guilty, the Court finds that Defendant engaged in planning and recruitment of accomplices and at the very least was a manager or supervisor in a criminal activity that involved five or more participants.[1] Accordingly, the Court hereby enhances Defendant's sentence, based on his "aggravating role" in the offense, three levels pursuant to U.S.S.G. § 3B1.1(b). *See* U.S.S.G. § 3B1.1(b), application note 4 (stating in its entirety "[i]n distinguishing a

leadership and organizational role from one of mere management or supervision, titles such as 'kingpin' or 'boss' are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.").[2] It should be noted that the Court makes these findings without reference to any conduct for which Defendant was previously tried and acquitted or received a mistrial; instead, the Court makes this determination based upon Defendant's plea of guilty to the charges in the Information and his sworn statements in support of such plea.[3]

■ Second, Defendant objects to any sentence enhancement for abuse of public trust. Defendant claims that he was never charged with a crime in his official capacity as Sheriff of Ottawa County, but instead, any illegal activity he undertook was strictly in his capacity as a private citizen. According to Defendant, it would be error to enhance his base sentence two levels based upon a finding that he abused a position of trust pursuant to U.S.S.G. § 3B1.3.

■ Courts consider a variety of factors to determine whether a defendant occupies a position of trust, including the extent to

---

1. The facts of this case arguably support a four level enhancement in Defendant's sentence for his role as an organizer or leader pursuant to U.S.S.G. § 3B1.1(a). Moreover, this result has clear support in the record if the Court were to consider sworn testimony by other participants in the alleged gambling conspiracy made either at Defendant's trial or in support of their various guilty pleas pursuant to Rule 11.

2. Given the Court's ruling on this issue, it necessarily follows that Defendant's claim that he should be given a two level decrease to his sentence pursuant to U.S.S.G. § 3B1.2 should be

rejected as inconsistent with the facts established by Defendant's plea of guilty to the Information and his sworn statement in support of that plea.

3. The Court observes that on June 18, 1997, Defendant moved to transfer this case to the Honorable H. Dale Cook for sentencing on the grounds that as the presiding judge, Judge Cook was more familiar with the facts from Defendant's previous trial. Since the Court has sentenced Defendant without reference to that trial record, there is no articulable basis for any such transfer, and therefore Defendant's motion is denied.

which the defendant's position permitted him the freedom to commit a "difficult-to-detect" wrong, whether the wrong could be easily detected, defendant's level of specialized knowledge, defendant's duties as compared to other employees, defendant's level of authority in the position, and the level of public trust. *U.S. v. Williams,* 966 F.2d 555, 557 (10th Cir.1992).

Defendant cites no authority for the proposition that he should be punished as a private citizen, rather than as an elected law enforcement official who violated the laws he was sworn to uphold. The Court finds that Defendant's contention is without support in the law and should be rejected. The Court further finds that Defendant's position as a high ranking officer afforded him the freedom to commit his crimes, and his office as the chief law enforcement official in Ottawa County certainly made it likely his crimes would go undetected. It simply is beyond argument that Defendant occupied a position of public trust as the elected Sheriff of Ottawa County, and, by engaging in illegal conduct, he abused this position of public trust. Accordingly, the Court finds a two level increase to Defendant's sentence entirely appropriate and Defendant's objection to this increase is hereby denied.

■ Lastly, Defendant urges the Court to consider a downward departure pursuant to U.S.S.G. § 5K2.0 because of his health problems and employment history, and because his incarceration will work a hardship upon his family. Such factors may be the basis for a downward departure if not adequately taken into consideration by the sentencing commission, or because such factors are present to an extraordinary degree. *See Koon v. United States,* 518 U.S. 81, 94–96, 116 S.Ct. 2035, 2045, 135 L.Ed.2d 392 (1996). Based upon a careful review of the facts, the Court concludes that such is not the case here. Therefore, the Court finds that an inadequate basis exists to grant a downward departure on the grounds offered by Defendant.

### III.

On May 22, 1997, the Court directed the parties to submit authorities relevant to the question of whether an upward departure is appropriate in this case for a disruption of governmental function. U.S.S.G. § 5K2.7. Plaintiff and Defendant each filed briefs on June 2, 1997. Plaintiff filed a response to Defendant's brief on June 9, 1997.

■ In order to include an upward departure from the guidelines in a sentence, the Court must undertake a three-step analysis. *United States v. White,* 893 F.2d 276, 277–78 (10th Cir.1990). First, the Court must determine that the circumstances justify a departure from the calculated guideline sentencing range. *Id.* at 277. The Court may depart only if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). Second, the Court must determine whether the circumstances justifying departure actually exist in the instant case. *White,* 893 F.2d at 278. Finally, the Court must determine a degree of departure that is reasonable. *Id.; see also* 18 U.S.C. § 3742(e)(3).

### A.

In determining if the circumstances justify departure, the Court must first determine whether a disruption of governmental function is a part of any abuse of public trust and, if not, whether the facts present here constitute such a disruption as contemplated by the sentencing guidelines.

The threshold question is whether the guidelines applicable to the instant offense, including an adjustment for abuse of public trust, encompass a disruption of a governmental function. In applicable part, departure guideline U.S.S.G. § 5K2.7, provides as follows:

> If the defendant's conduct resulted in a significant disruption of a governmental function, the court may increase the sentence above the authorized guideline range to reflect the nature and extent of the disruption and the importance of the governmental function affected. Departure from the guidelines ordinarily would not be justified when the offense of conviction is an offense such as bribery or obstruction of justice; in such cases interference with

a governmental function is inherent in the offense, and unless the circumstances are unusual the guidelines will reflect the appropriate punishment for such interference.

U.S.S.G. § 5K2.7, p.s.

■ As the court made clear in *United States v. Gunby,* 112 F.3d 1493 (11th Cir. 1997), the Commission did not take the significant disruption of a governmental function into account in calculating the sentencing range for some offenses, including violation of public trust. As the court in *Gunby* explained:

> Because fraud and the significant disruption of a governmental function are analytically distinct, a sentencing court can apply sections 2F1.1(a) and 5K2.7 simultaneously. *See, e.g., United States v. Root,* 12 F.3d 1116, 1122 (D.C.Cir.1994) (affirming a district court's application of § 5K2.7 to conduct covered under § 2F1.1(a)). *Similarly, an abuse of public trust does not automatically entail the disruption of a governmental function.* For instance, an IRS employee could abuse her position of trust by surreptitiously examining her neighbor's tax return, but this crime would not necessarily involve the disruption of a governmental function. Because an abuse of public trust and the disruption of a governmental function are analytically distinct, a sentencing court can apply sections 3B1.3 and 5K2.7 simultaneously. *See, e.g., United States v. Sarault,* 975 F.2d 17, 22 (1st Cir.1992) (affirming a district court's application of §§ 5K2.7 and 3B1.3 to the same criminal conduct). Therefore, the significant disruption of a governmental function is not inherent in the offense of large-scale fraud involving an abuse of public trust, and sections 2F1.1(a), 3B1.3 and 5K2.7 can all apply to Gunby's fraudulent conduct. *See, e.g., United States v. Hatch,* 926 F.2d 387, 397 (5th Cir.1991) (affirming a district court's application of all three sections to the same underlying conduct). We hold that the base offense and adjustment guidelines applied to Gunby do not adequately take into consider-

ation the aggravating circumstance cited by the district court and described in § 5K2.7.[4]

(emphasis added) Consistent with these principles articulated by the Eleventh Circuit, the Court concludes that a defendant may be sentenced for both an abuse of public trust and a disruption of governmental function.

**B.**

■ The second step is to determine whether the circumstances present here justify an upward departure. *Gunby* provides guidance on this issue as well. *Gunby,* 112 F.3d at 1502. Our system of law cannot function without the confidence of the people. A primary responsibility of all public officials is to enhance confidence in our government. Citizens have a right to expect strict compliance with the law by elected law enforcement officials. All law enforcement officials have an obligation to support and promote the rule of law. Law enforcement officials must evidence respect for the law if society is to expect those subject to their actions to respect the law as well. An officer who causes people to question the integrity and impartiality of law enforcement undermines the rule of law and disrupts the functioning of all aspects of law enforcement in both the executive and judicial branches of government. Confidence in our legal system is undermined when those who are charged with enforcing the law choose to break the law instead. If a public official's actions cause the people of Ottawa County, and elsewhere, to doubt the commitment to even-handed law enforcement by the Sheriff's office, then that public official has significantly disrupted a governmental function. The Court concludes that section 5K2.7 encompasses this loss of confidence in government. *See Gunby,* 112 F.3d at 1501–02; *United States v. Khan,* 53 F.3d 507, 518 (2nd Cir.1995), *cert. denied,* 516 U.S. 1042, 116 S.Ct. 697, 133 L.Ed.2d 655 (1996); *United States v. Murillo,* 902 F.2d 1169, 1174 (5th Cir.1990).

The Court finds that Defendant evidenced a total disregard for his oath of office. His

---

4. *Gunby,* 112 F.3d at 1501. The sentencing guidelines list the significant disruption of a governmental function as a ground for departure in section 5K2.7. Therefore, the Court finds that

consideration of this factor is consistent with the goals of the sentencing guidelines. *See Koon v. United States,* 518 U.S. 81, 94–96, 116 S.Ct. 2035, 2045, 135 L.Ed.2d 392 (1996).

actions undermined public confidence in government in general and law enforcement in particular. This erosion of public confidence in government occasioned by Defendant's conduct amounts to a disruption of a governmental function as contemplated by the sentencing guidelines.

### C.

The final step is to determine a reasonable departure based on the facts and circumstances of this case. The Court believes that a two-step upward departure is warranted as a result of Defendant's abject disregard for his oath of office. The Court desires to restore confidence in our legal system by demonstrating that intentional unlawful conduct by those charged with enforcing the law will be punished. The Court believes that a two-level upward departure is a measured step toward accomplishing this goal.

### IV.

In summary, the Court finds that Defendant's sentence should be increased three levels as a manager or supervisor in the instant case, notwithstanding the recommendation in the PSR that Defendant should be considered a leader or organizer. The Court further denies Defendant's objections to the PSR and rejects Defendant's request for a downward departure under the guidelines. Finally, the Court finds that an upward departure of two levels for significant disruption of governmental function is warranted under the facts of this case.

Except as otherwise set forth in this order, the Court adopts the findings of the PSR for purposes of determining Defendant's sentence in this matter.

**IT IS SO ORDERED.**