UNITED STATES of America, Plaintiff,

v.

Richard RABIN, Defendant.

No. Crim. 97–270(WGB).

United States District Court,
D. New Jersey.

Nov. 24, 1997.

United States Attorney's Office by Timothy McInnis, Assistant United States Attorney, Newark, NJ, for Plaintiff.

Federal Public Defender's Office by Lorraine Gauli–Rufo, Assistant Federal Public Defender, Newark, NJ, for Defendant.

## MEMORANDUM OPINION

BASSLER, District Judge.

### I. SENTENCE UNDER THE GUIDELINES.

Defendant Richard Rabin ("Defendant") has pled guilty to conspiracy to evade personal income tax in violation of 18 U.S.C. § 371 and 26 U.S.C. § 7201.

The Presentence Report ("PSR") calculated the amount of tax loss to be $118,580, resulting in a base offense level of 14.

The PSR also reflected a two-point increase to the offense level because Defendant's conduct was intended to encourage persons other than or in addition to co-conspirators to violate the internal revenue laws or impede, impair, obstruct, or defeat the ascertainment, computation, assessment, or collection of revenue. U.S.S.G. § 2T1.9(b)(2).

The total base offense level of 16 was then reduced to 13 because the PSR accorded Defendant a three-point reduction for acceptance of responsibility. U.S.S.G. § 3E1.1(a) and U.S.S.G. § 3E1.1(b). A total offense level of 13 with a criminal history category of I results in a guideline range of 12–18 months.

The Government seeks an upward departure on the ground that Defendant's actions resulted in a significant disruption of a governmental function. U.S.S.G. § 5K2.7. The Government bases its request on Defendant's introduction of false statements and false testimony by a co-conspirator in his divorce proceeding, and argues that the conduct is analogous to obstruction of justice, warranting a two-point increase. U.S.S.G. § 3C1.1.

Defendant objected to the PSR on three grounds. First, he argued that the calculation of the tax loss was inaccurate in several respects. Second, he objected to the PSR's two-level enhancement, pursuant to U.S.S.G. § 2T1.9(b)(2), for encouraging others to violate the internal revenue laws. Finally, he objected to the Government's request, under U.S.S.G. § 5K2.7, for a two-level upward departure for significant disruption of a governmental function.

At an evidentiary hearing, the Court heard testimony from Salvatore Laurice

("Laurice"), Defendant's co-conspirator, John Gagliardo, an Internal Revenue Service investigator, Donna Santangelo ("Santangelo"), Defendant's former girlfriend, and Helen Rabin, Defendant's ex-wife.

## II. DISCUSSION

### A. The Conspiracy

Defendant does not challenge the basic facts of the conspiracy as set out in the PSR. Defendant was a Coca–Cola route driver and union official with the International Brotherhood of Teamsters, Local 125, in Little Falls, New Jersey. In 1981, Coca–Cola offered drivers the opportunity to purchase their routes and operate them as distributorships. Defendant did not purchase his route since it would have created a potential conflict with his role as a union official. Laurice was a supervisor with Coca–Cola. Although Laurice was interested in a Coca–Cola route, as a member of Coca–Cola management, he was ineligible to purchase a distributorship route.

Laurice and Defendant entered into an agreement in 1981 that purported to transfer to Laurice Defendant's right to purchase his route from Coca–Cola. The terms of the agreement required Laurice to pay Coca–Cola $60,000 and the Defendant $100 per week for 20 years.

In fact, this agreement did not spell out the true terms of the payments. Under the actual terms, instead of a $100 flat rate, Defendant received 20 cents per case per week from Laurice. Laurice paid Defendant's "official" $100 per week by check, but he paid the remaining amount in cash. Laurice kept the difference between the commission he received per case and the 20 cent per case payment to Defendant.[1] In 1989, Defendant and Laurice drew up a contract that memorialized the true agreement between the parties. Defendant never reported the cash payments on his income tax returns and never paid taxes on the amount. This tax evasion continued until 1995.

Defendant was initially questioned as part of an investigation into Local 125 activities, but denied underreporting his income. Lau-

rice, however, was granted immunity and revealed the true nature of his agreement with Defendant. PSR § 54–56.

### B. Calculation of Tax Loss

The PSR calculates the tax loss by multiplying the number of cases of Coca–Cola sold by Laurice by 20 cents per case, resulting in the amount of money paid to Defendant under their "secret" agreement. Defendant's unreported income is this amount minus the income from the route that he reported to the Internal Revenue Service. The tax loss for sentencing purposes, pursuant to U.S.S.G. § 2T1.1(c)(1) Note A, is 28% of the total gross unreported income. The PSR figures were calculated using information provided by Laurice and verified through sales records from Coca Cola.

The PSR calculates Defendant's unreported income to be $423,101. The tax loss would thus be 28% of $423,101, or $118,580. Under U.S.S.G. § 2T4.1(I) (Tax Table), a tax loss of more than $70, 000 but less than $120,000 results in a base offense level of 14.

■ Defendant challenges these calculations on three grounds. First, Defendant argues that the Government provides insufficient evidence of the amount of money paid to him. The Court disagrees. The Government introduced detailed records kept by Laurice himself tracking the number of cases of Coca–Cola sold as well as the amounts paid to Defendant. Furthermore, John Gagliardo, an Internal Revenue Service investigator, testified that the number of cases sold was verified against Coca–Cola's own sales records. The Court finds that ample evidence has been presented to support the Government's calculation of unreported income and tax loss.

Second, Defendant argues that using the figure of 20 cents per case sold results in an inaccurate calculation of the amount of unreported income, because Laurice was forced to cut his commissions for certain "discount store" customers. On these accounts, the agreement between Laurice and Defendant provided that Defendant would receive 10

---

1. Laurice received lower commissions on certain discount store accounts. On sales to these cus-

tomers, Laurice paid Defendant 10 cents per case.

cents per case, rather than 20 cents. Therefore, Defendant argues, the PSR overstates his income from the contract.

Although Defendant claims that certain accounts paid lower commissions, this assertion is not sufficient for the Court to conclude, without more, that the amount of loss is "substantially less" than that calculated by the PSR. The Government has calculated that the "cut commission" accounts, for which Defendant received 10 cents per case, result in an adjustment to his total gross income of only $33,600. The total amount of unreported income, accounting for "cut commission" accounts, comes to only $389,901. With an unreported income of $389,901, the tax loss is $97,475.25, which still results in a base offense level of 14 under U.S.S.G. § 2T4.1(I). Therefore, Defendant's objection has no bearing on the sentence under the Guidelines.

■ Finally, Defendant contends that the amount of tax loss should be limited to the years 1990–1993, the only years specified in the Information, rather than the years 1981–1993. Defendant claims this would result in a tax loss of $54,716 and a base offense level of 13 under U.S.S.G. § 2T4.1. The Sentencing Guidelines make clear, however, that the Court is not limited to the charged time period in calculating the amount of loss. On the contrary, the Commentary to U.S.S.G. § 2T1.1 provides that the total tax loss should be calculated based on the entire course of Defendant's tax-evasion scheme:

In determining the total tax loss attributable to the offense (*see* § 1B1.3(a)(2)), all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan.... The following examples are illustrative of conduct that is part of the same course of conduct or common scheme or plan: (a) there is a continuing pattern of violations of the tax laws by the defendant; (b) the defendant uses a consistent method to evade or camouflage income ...; (c) the violations involve the same or a related series of transactions; ... and (e) the violation in each instance involves a failure to report or an understatement of a specific source of income....

Application Note 2, U.S.S.G. § 2T1.1. Defendant's conduct fits nearly all of the examples of relevant conduct provided in the Guideline. He failed to report his true income under the agreement for years. He used a consistent method to camouflage his income—under the table cash payments. The violations all arose from his "secret" interest in the Coca-Cola route.

The Court finds that Defendant's failure to report income and pay taxes on his secret agreement with Laurice constituted the same course of conduct from the inception of the agreement until he was arrested. Furthermore, Defendant pled guilty to Count One of the Information, which charged a conspiracy spanning the years 1981 through 1995. Therefore, it is appropriate to apply the amount of tax loss incurred for the entire course of the conspiracy. The Court will apply the adjusted amount of loss as calculated by the Government, $97,475.25, which dictates a base offense level of 14. U.S.S.G. § 2T4.1(I). *See United States v. Valenti*, 121 F.3d 327, 333 (7th Cir.1997) (in cases involving tax evasion, sentencing court may use government's evidence of tax loss to determine base offense level).

### C. Departure for Encouraging Others to Violate Tax Laws

■ Defendant next objects to the addition of two points to his offense level pursuant to U.S.S.G. § 2T1.9(b)(2), which allows an increase where a defendant's conduct

was intended to encourage persons other than or in addition to co-conspirators to violate the internal revenue laws or impede, impair, obstruct, or defeat the ascertainment, computation, assessment, or collection of revenue....

U.S.S.G. § 2T1.9(b)(2). The PSR applies this section on the ground that Defendant encouraged his girlfriend and his attorney to hide his income. Defendant argues, however, that there are no facts to suggest that he encouraged others to violate the tax laws.

The evidence demonstrates, however, that Defendant had Santangelo repeatedly deposit the cash proceeds of his agreement with Laurice in her bank account. Santangelo

was aware of the true nature of Defendant's agreement regarding the Coca–Cola route; in fact she had accompanied Defendant to Laurice's house on several occasions to pick up payments. Santangelo testified that Defendant told her on several occasions that he structured the finances in this way "because of the taxes." She also testified that Defendant's dishonesty about taxes and other financial matters was a cause of their breakup. The Court finds from the credible evidence that Defendant intended to encourage Santangelo to violate the tax laws.

Defendant's conduct toward his attorney also evinces an intent to encourage him to conceal income. According to Laurice, Defendant informed Sanford Oxfeld ("Oxfeld"), one of his attorneys, of the existence of his agreement with Laurice and apparently received assistance from Oxfeld in drafting a written version of the agreement. Oxfeld also agreed to act as arbiter for any disputes that arose out of the agreement. Most significantly, Defendant told Oxfeld to keep the agreement "quiet" because of Defendant's matrimonial problems. PSR, ¶ 44.

■ Defendant does not disagree that he tried to hide his income, but argues in a letter to the Court that he did so because of his contentious divorce pending in the New Jersey Superior Court, Chancery Division, Family Part. A defendant may have more than one nefarious motive for his actions. It is illogical to suppose that Defendant intended to hide income solely from his ex-wife, but not from the I.R.S. If Defendant were properly reporting and paying taxes on the income, there would be no need to keep the agreement "secret" or conceal income at all, since his ex-wife and the court would be aware of his true income from his tax returns.[2] The Court finds that the Defendant was attempting to hide his income from the I.R.S., and that he encouraged others to do so as well. *See United States v. Sileven,* 985 F.2d 962 (8th Cir.1993) (enhancement under § 2T1.9(b)(2) not error where defendant repeatedly encouraged others to hide income through his words and actions). Therefore,

the Court concludes, based upon the testimony at the evidentiary hearing, that a two-point increase in the base offense level is warranted under U.S.S.G. § 2T1.9(b)(2).

D. *Significant Disruption of Governmental Function*

■ The Governmental moves for a two-point upward departure, pursuant to U.S.S.G. § 5K2.7 and 18 U.S.C. § 3553(b). This section provides:

> If the defendant's conduct resulted in a significant disruption of a governmental function, the court may increase the sentence above the authorized guideline range to reflect the nature and extent of the disruption and the importance of the governmental function affected. Departure from the guidelines ordinarily would not be justified when the offense of conviction is an offense such as bribery or obstruction of justice; in such cases interference with a governmental function is inherent in the offense, and unless the circumstances are unusual the guidelines will reflect the appropriate punishment for such interference.

Specifically, the Government charges that Defendant interfered with the function of the state court hearing his divorce case by filing a false financial statement and by convincing Laurice to testify falsely that the only proceeds from the contract amounted to $100 per week. As a result, the state court awarded Defendant's ex-wife no additional support.

In promulgating the Sentencing Guidelines, the Sentencing Commission intended that sentencing courts would "treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes." *United States v. Benish,* 5 F.3d 20 (3d Cir.1993), quoting U.S.S.G. Ch. 1, Pt. A, 4(b). A sentencing court may impose a sentence outside the range established by the applicable guidelines if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, *not adequately taken*

---

2. The Court takes judicial notice that the Case Information Statement filed by each party in New Jersey family court proceedings requires

submission of a copy of the party's most recent income tax return. F.R.E. 201.

into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b) (1988) (emphasis added).

The number of potential factors to be considered by a sentencing court in determining whether to depart is as wide and varied as human nature itself. *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) identifies four categories for purposes of determining whether departure is appropriate pursuant to 18 U.S.C. § 3553(b): (1) forbidden factors[3]; (2) encouraged factors; (3) discouraged factors; and (4) factors that are unmentioned in the Guidelines. *Koon*, 518 U.S. at ——, 116 S.Ct. at 2045; *United States v. Haut*, 107 F.3d 213, 218 (3d Cir. 1997).

■ The district court is vested with varying degrees of discretion to depart depending on what type of factor is at issue. In *Koon*, the Supreme Court explained:

> If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the Court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present.

*Koon*, 518 U.S. at ——, 116 S.Ct. at 2045 (citations omitted). *See also Haut*, 107 F.3d at 218. Departures are the exception, not the rule. *United States v. Rosen*, 896 F.2d 789, 792 (3d Cir.1990). The departure for disruption of a governmental function is an "encouraged factor"; thus the Court is authorized to depart unless the Guidelines already take it into account.

In a letter submitted to the Court by his attorney, Defendant argues that the non-reporting of his income to the state court is "inherent" in the offense of tax evasion, and therefore, is excluded from the type of conduct covered by U.S.S.G. § 5K2.7. Defendant also claims that his conduct did not affect the state court to the degree necessary for an upward departure under section 5K2.7.

The Court disagrees that submission of false evidence to the state court is inherent or already reflected in the Guideline sentence for tax evasion. The conduct the Government cites as a basis for upward departure is analogous to perjury. The offense of tax evasion involves the failure to pay taxes on income but does not necessarily include perjury regarding income in other actions. "The laws prohibiting perjury and tax evasion protect wholly disparate interests and involve distinct harms to society." *United States v. Barone*, 913 F.2d 46, 49 (2d Cir. 1990). Likewise, the disruption to governmental function caused by Defendant's lying under oath to the state court is different from the disruption caused by his tax evasion. *See United States v. Velez*, 113 F.3d 1035 (9th Cir.1997) (filing false documents did not inherently disrupt governmental function; INS administrative process could go on unabated).

Defendant, in a letter submitted to the Court, admits he did not acknowledge his true income to the state court. Laurice, on Defendant's request, also testified falsely that Defendant received only $100 per week for the route. Since the family court Case Information Statement required Defendant to submit his most recent income tax return, the Court must presume that Defendant submitted a falsified tax return to the state court as well. The falsified Case Information Statement and Laurice's perjury to the state court were acts in furtherance of Defendant's conspiracy to evade payment of income taxes (and concomitantly, to hide income from his ex-wife). Because of Defendant's conduct, the state court decided that there was insufficient evidence to award Defendant's ex-wife and son increased support. PSR, ¶ 40.

---

**3.** The forbidden factors are: race, sex, national origin, creed, religion, socio-economic status, lack of guidance as a youth, drug or alcohol dependence, and economic hardship. U.S.S.G. §§ 5H1.10, 5H1.12, 5H1.4 and 5K1.2.

Since Defendant's false statements concealed the majority of his income from the route, it is probable that had the state court been aware of the true extent of Defendant's income, some increase in support would have been awarded. At the very least, the court very likely would have reevaluated Defendant's support obligations in light of his true income and ability to pay. A family court, in determining support payments, must be aware of the true circumstances in each case in order to fulfill its duty to the parties and to ensure that its decisions serve the interests of justice. Defendant purposely interfered with the function of the court in order to protect his secret income from discovery and to continue his conspiracy with Laurice.

The Court finds that Defendant's actions significantly disrupted the function of the state court hearing his divorce proceeding. *See United States v. Root,* 12 F.3d 1116 (D.C.Cir.1994) (FCC approval process significantly disrupted when agency dismissed possibly qualified applicants based on forged documents). Therefore, an upward departure of two points is warranted, pursuant to U.S.S.G. § 5K2.7.

 It could be argued that there must be a direct relationship between the offense and the governmental agency whose function is disrupted, i.e., a departure is warranted here only if a function of the I.R.S. is disrupted. For example, in *United States v. Root,* supra, the defendant's mail fraud involved forged documents that disrupted the FCC approval process.

The Court, however, does not read the Guidelines to impose that restriction. The conviction here is conspiracy to evade personal income taxed from 1981 to 1995. The acts in furtherance of the conspiracy included a phony agreement with Defendant's co-conspirator Laurice. That conspiratorial conduct continued with the perjured testimony of Laurice presented to the New Jersey Superior Court. The conspiracy to hide income had the result in this case of defeating the state court's ability to determine Defendant's true income in order to properly adjudicate his support obligations. The conduct of Defendant during the course of the conspiracy resulted in a significant disruption of a governmental function.

### III. CONCLUSION

Defendant makes several non-guideline objections to information contained in the PSR. Except as to those objections the Court, as modified by this Opinion, adopts the factual statements in the PSR.

The Court concludes that Defendant's total offense level is 15 and his criminal history level is I, resulting in a sentencing range under the Guidelines of 18–24 months.